BRADY *v.* THE MAYOR, &c., OF THE CITY OF NEW YORK.

The charter of the city of New York, requiring certain work to be done by contract on sealed bids, and such contracts to be given to the lowest bidder, it is a violation of the law for the city officers to test the bids by a comparison which omits a substantial part of the work to be contracted for.

Thus, where bids were invited for grading and paving a street upon an estimate of the amount of work and materials required, by which the bids were to be tested, which estimate did not include any rock excavation, although bids for such excavation, if any should be needed, were called for: *Held*, that a contract awarded upon such estimate and test of bids was illegal and void, the lowest bidder not being capable of ascertainment.

It was the duty of the contracting officer to state some estimate of the probable amount of such excavation which might be required, and he had no power, after excluding rock from the data by which bids were to be tested, to contract for a price to be paid for its removal.

*It seems* that evidence is admissible to impeach the contract that the bid accepted was not in fact the lowest according to the data proposed as tests, without showing a fraudulent collusion between the bidder and the officers awarding the contract.

The confirmation by the common council of an assessment based upon such illegal contract does not give it any validity as against the corporation.

APPEAL from a judgment of the Superior Court of the city of New York. The action was brought to recover the amount claimed to be due the plaintiff for work under a contract in writing between the parties, entered into by the street commissioners on behalf of the city, for setting curb and gutter stones, and flagging Eighty-third street, from the Third avenue to Avenue A. The case was tried before a referee. The following facts appeared in evidence: on the 8th day of June, 1854, the common council of New York adopted a resolution and ordinance, directing that curb and gutter stones be set and flagging four feet wide be laid on both sides of Eighty-third street between the avenues mentioned, under the direction of the street commissioner. On the 27th of July, 1854, James Furey, then street commissioner, advertised for proposals for doing said work. The advertisement contained the following provisions: "Estimators will state in their proposals the price for furnishing and setting curb and gutter stones per running foot, including the necessary regulating of the street and removing or furnishing earth if required; the price per square foot for flagging, including the regulating of the sidewalks, and the furnishing the sand and gravel in which it shall be laid and covered; also the removal of all surplus material or rubbish after the completion of the work; *the price per cubic yard for removing rock if any should be found.* The following is the estimate of work and materials by which the bids will be tested, viz.: three thousand eight hundred and forty running feet of curb and gutter stone, and fifteen thousand six hundred feet of flagging." The plaintiff put in proposals at the following prices: For setting curb and gutter stones, per lineal foot, forty-five cents; for flagging, per square foot, eleven cents; for rock excavation per cubic yard, $25. The contract was awarded to the plaintiff, as the lowest bidder, upon those proposals; and by its terms he was to do the work and be paid for it at those prices. The work was completed in November, 1854,

and it was duly approved by the inspector and street commissioner. The quantity of work done, and amount of the several items at the contract price were as follows:

Curb and gutter, running feet, 4,046, . . . . . . . . $1,820 92
Flagging, square feet, 15,686, . . . . . . . . . . . . . .   1,725 46
Removing rock, cubic yards, 943, . . . . . . . . . . 23,575 00

The plaintiff had been paid $18,985.27, being seventy per cent on the aggregate amount by the defendants, leaving unpaid $8,136.11, which he claimed to recover in this action.

It appeared that at the time of passing the ordinance requiring the work to be done, the common council had appointed three persons assessors, to apportion the expense of the improvement among the owners and occupants of houses and lots intended to be benefited thereby. In February, 1856, they made out an assessment list apportioning the amount, with certain expenses, in the whole $28,247, upon the city and two individuals, of which the share of the city was $23,653.85, and of both the others $5,095.15. This list was confirmed by the common council the 9th of August, 1856.

Upon the trial, the defendant offered to give in evidence the original proposals received by the street department, pursuant to the advertisement, as follows, the amounts stated in each case being that resulting from the test proposed, leaving out the rock excavation, viz.:

J. Slatterly, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $4,260 00
B. McCabe, . . . . . : . . . . . . . . . . . . . . . . . . . .   3,797 00
J. B. Brady (the plaintiff), . . . . . . . . . . . . . . . .   3,709 00
J. Hodgins, . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3,559 80

And that McCabe's proposal contained a bid to excavate the rock at $5 per cubic yard. The defendant's counsel objected to the evidence, and the referee sustained the objection, unless the defendants would undertake to prove that the plaintiff fraudulently colluded with the city officials or some of them

in obtaining the contract. The defendant's counsel excepted.

On the cross-examination of Jacob Rudolphe, the city surveyor, who was examined on the part of the plaintiff and who had testified that he was familiar with rock excavation and knew the cost of it, the defendant's counsel proposed to ask him what it was worth to excavate rock per cubic yard. The plaintiff's counsel objected, and the referee excluded the inquiry, and the defendants excepted.

There is a provision in the act of 1849, to amend the charter of the city of New York, as follows: "All contracts to be made or let by the authority of the common council for work to be done or supplies to be furnished, &c., shall be made by the appropriate heads of departments under such regulations as shall be established by ordinances of the common council." (*Laws of* 1849, *p.* 284, § 23.) Under this provision the common council had committed the duty of making such contracts as the one in question to the street commissioners and had, before the enactment of the statute of 1853, next mentioned, prescribed certain rules upon the subject of contracts, requiring, among other things, that proposals should be issued, which were to state the nature and extent, as near as possible, of the work required. The act to amend the city charter, passed in 1853 (*ch.* 217), contained the following section: "All work to be done and all supplies to be furnished for the corporation, involving an expenditure of more than $250, shall be by contract founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days; and all such contracts, when given, shall be given to the lowest bidder, with adequate security. All such bids or proposals shall be opened by the heads of departments advertising for them, in the presence of the comptroller, and such of the parties making them as may desire to be present." (§ 12.)

The defendant's counsel moved to dismiss the complaint on the ground, amongst others, that the plaintiff was not the lowest bidder, and that the contract was made in violation of the charter and ordinances of the city. The motion was denied; and

the referee made a report in favor of the plaintiff for $8,566.26, being the amount claimed and interest.

In the findings of facts by the referee, the several matters hereinbefore stated were mentioned; and the referee also found affirmatively, "*that the lowest bidder*, upon the data given in such proposals, *could not be ascertained.*" In his findings of law he held the contract to be illegal and void, as regards the rock excavation, because the amount of such excavation was not included among the data by which bids were to be tested. But he held also that the plaintiff was entitled to recover a reasonable compensation as upon a *quantum meruit*, which the common council had a right to adjust, and that by their act confirming the assessment, the council had adjusted the claim, at the amount of the contract prices. The defendant's counsel excepted to these conclusions so far as they were unfavorable to it.

The Superior Court, at general term, reversed the judgment entered on the referee's report, holding with the referee that the contract was illegal; and further, that the plaintiff was not entitled to recover upon a *quantum meruit*, or at all. The plaintiff appealed, stipulating as required by the statute.

*John H. Reynolds*, for the appellant.

*Richard Busteed*, for the respondent.

DENIO, J. The 12th section of the act of 1853, amending the charter of the city of New York, established a system by which all work to be performed for the city which should cost more than $250 should be subjected to public competition, and should be given out to the party who would undertake to do it for the smallest amount of money. It was based upon motives of public economy, and originated, perhaps, in some degree of distrust of the officers to whom the duty of making contracts for the public service was committed. If executed according to its intention, it will preclude favoritism and jobbing, and such was its obvious purpose. It does not require any argument to show that a contract made in vio-

lation of its requirements is null and void. We are, therefore, to determine whether the contract under consideration was made in furtherance of this policy, or in hostility to it; or in other words, whether it was in conformity with the law or in violation of it. The work to be performed in Eighty-third street was in part the removing of a quantity of fixed rock; the rest was the laying of flagging or curb-stone. The rock excavation, according to the plaintiff's claim, was more than seven-eighths of the whole expense, and at any rate it was a substantial and important part of the work. A form of inviting proposals and of awarding a contract was adopted, but it was so arranged that there was not only not to be any competition as to the rock excavation, but that was to be paid for at such price as the bidder chose to insert in his proposal, provided that as to the other comparatively inconsiderable portion of the work he bid lower than any one else. A form of proposal, which should have confined the competition in terms to the flagging and the curb and gutter work, and should have left the rock to be paid for by day's work, or at what it was worth, would have been fair upon its face, and would not have peculiarly exposed the city to imposition; and if it were practically impossible to subject the removing of the rock to competition, because the quantity could not be sufficiently ascertained, such a method of arranging the proposals might not have been objectionable. But it is not found by the referee, and was not proved on the trial, that there was an impossibility, or even any difficulty, in stating the quantity of rock excavation with sufficient certainty. Indeed, taking his conclusions of fact and law together, the fair construction of the finding is that it could be determined with such approximate accuracy as would be essential to subject it to the competition required by the statute. It is found positively, as a matter of fact, that by the plan adopted the lowest bidder could not be ascertained; and the conclusion of law stated is, that it was the duty of the street commissioner, under the charter and ordinances, to have stated in his estimate or proposals the amount of rock excavation which would probably be required in doing the work in ques-

tion, and to have included it among the data by which his bids were to be tested. Unless the referee believed upon the evidence that it was susceptible of ascertainment, to such a degree of certainty as to enable it to be stated among the data for testing the bids, he could not have come to these conclusions. But I apprehend that we may now say, from the knowledge of such matters which every man may be supposed to have, that the quantity could be ascertained with a sufficient approximation to accuracy to expose it to a fair competition. The distance in length was only about two thousand feet. It appears by the contract that there was a profile in the street commissioner's office, which necessarily showed the conformation of the ground and the grade of the street. The problem was to ascertain whether rock existed in that portion of it which was above the grade, and to determine, by making so many incisions of the soil as might be necessary, its thickness from the top of the rock to the grade, and then to ascertain its quantity by calculation. No doubt it would require time, attention, and care; but the same may be said of most acts which are really useful. The city had an officer in its pay (the surveyor), within whose functions such a duty would naturally fall. An ordinance of the common council required the street commissioner to state in his advertisement for bids the nature and extent, as near as possible, of the work required. I cannot persuade myself that this was a case in which it was impossible, or really difficult, to ascertain and state in the invitation for bids that the work in question would require the blasting and removal of a quantity of fixed rock, and to give an estimate of the number of cubic yards sufficiently exact to enable persons desirous of competing to propose with prudence and safety for each item of the work. If this had been done, and if the result of all the offers had been taken into the account in selecting the lowest bidder, a contract given to that person would have been awarded according to the statute. The successful bidder was here arrived at by laying out of the account the bulk of the work in point of labor and expense, and testing the offers by the price proposed for an inconsiderable portion of it. The plain-

tiff claims under the act of a public officer whose duties in this respect are prescribed by law. If in doing it he violated, as I think he did, the plain mandates of that law, the act was illegal, and the plaintiff can claim nothing under it.

The plaintiff offered to show, by the production of the original bids, that the plaintiff was not the lowest bidder according to the data given in the street commissioner's proposals, and the offer was rejected, unless proof of fraudulent collusion was also offered. The ruling was, I am inclined to think, erroneous. If it is not so, a contract might be given to the highest instead of the lowest bidder, and it would be of equal validity as though properly given. If it should be said that the contractor might not be cognizant of the illegality, the answer is, that he is entitled to be present when the bids are opened; and it is not unreasonable that he should see to it that he is by law entitled to the contract which is given to him. But it is not necessary to decide this point, and I prefer to place my opinion on the ground that the proposals of the street commissioner were illegal upon their face, in declaring that the successful bidder would be ascertained by a test which left out of view the principal part of the work.

It is not necessary to deny that one who has *bona fide* performed labor, under a contract which is void from a failure to comply with the statutes, may maintain an action against the city to recover a *quantum meruit*, where the work has been accepted by the city, and has gone into use for public purposes. The plaintiff objected to evidence as to the price of rock excavation, and it was excluded at his instance. If he was entitled to that measure of compensation, there should be a new trial in order to enable its amount to be ascertained.

The action of the common council in confirming the assessment roll cannot aid the plaintiff, upon any principle with which I am acquainted. That body could not make the contract originally; and if a lawful one has not been made by the officer to whom that duty was committed by law, it cannot be helped out by any resolution of the council. The action has no force as an estoppel. It was between other par

ties, and did not affect the plaintiff in any way.  It proves, perhaps, that the common council then supposed the city liable for this claim; but they have since decided to contest it, and our duty is to pass upon the defence which they have presented.

I am in favor of affirming the judgment of the Supreme Court.

ALLEN, J., delivered an opinion to the same effect; SELDEN, GRAY and GROVER, Js., concurred.

Judgment absolute for the defendant.