JAMES McBRIAN ET AL. v. CITY OF GRAND RAPIDS.

*Municipal Contracts—Bids.*

Whether, where work to be done under a municipal contract involves operations the difficulty and cost of which cannot be accurately foreseen, there can be any flexibility in the terms of the contract and any scope for a choice among bids—Q.

Error to the Superior Court of Grand Rapids. (Parrish, J.) October 23, 1884.—January 28, 1885.

ASSUMPSIT. Plaintiffs bring error. Affirmed.

*E. S. Eggleston* for appellants.

*J. W. Ransom* for appellee. Where the charter of a city requires its officers to award contracts to the lowest bidder, a contract made in violation of its requirements is illegal; and in an action brought on such contract for the work, the city may plead its illegality in defense: 1 Dill. Mun. Corp. § 466; *Dickinson v. Poughkeepsie* 75 N. Y. 65; *Mitchell v. Milwaukee* 18 Wis. 92; one who deals with a municipal body is obliged to see that its charter has been fully complied with; when this is not done, no subsequent act can make the contract effective: *Sault Ste. Marie v. Van Dusen* 40 Mich. 429; and no implied assumpsit can be raised against the municipality: *McSpedon v. Mayor of New York* 7 Bosw. 601; *McCracken v. San Francisco* 16 Cal. 591; *Pimental v. San Francisco* 21 Cal. 354; *Thomas v. Richmond* 12 Wall. 349

CHAMPLIN, J. On the 7th day of April, 1880, the plaintiffs, James McBrien and John S. Farr, entered into a contract with the city of Grand Rapids to construct the extension of the Winter-street sewer from its then terminus to the south line of North street, in the city of Grand Rapids. By the terms of the contract the plaintiffs were to furnish all of the material, and do all of the work, in accordance with the plans, specifications and profile relating thereto, then on file in the office of the Board of Public Works of said city, which

plan, specifications and profile were declared to be a part of the contract, and a copy of the specifications was annexed to the contract. The plaintiffs were to commence work on the 15th of April, 1880, and complete the same to Fifth street before July 15, 1880, and complete the whole work before December 1, 1880, for the sum of $25,547. The plaintiffs completed the work about the 1st of December, 1881. The defendant paid to the plaintiffs upon this contract the sum of $25,125, leaving of the $25,547 the sum of $422 unpaid.

The plaintiffs claimed that by the terms of the contract, if they encountered rock excavation which had to be blasted, they were to receive pay for it by the cubic yard at what it was reasonably worth. Plaintiffs, in the progress of the work, encountered rock excavation which had to be blasted, and took out of such rock, as found by the court, 235½ cubic yards, which was found to be worth four and a half dollars per cubic yard, making the sum of $1059.75. The plaintiffs brought suit upon this contract, claiming the unpaid balance of $422 ; for rock excavation, $4000 ; for quicksand excavation, $4500 ; for extra gravel, $400 ; for extra sheet-piling, $300 ; for interest on the above items, $500.

To this declaration the defendant pleaded the general issue, and gave notice that it would show—*first*, that plaintiffs undertook and agreed to do all of the work of constructing the said sewer, and furnish all of the material necessary therefor, do all of the work incident thereto, and furnish all of the material for such incidental work, for the gross sum named in the contract, viz., $25,547 ; *second*, that plaintiffs had been paid on said contract the sum of $25,125 ; *third*, that the plaintiffs were indebted to the defendant for tapping city water-mains, and for water furnished by defendant to plaintiffs in the construction of said work, in the sum of $439.49, which defendant would set off, etc. ; *fourth*, that plaintiffs had failed to complete the contract within the time agreed upon, and did not complete the same until about the 9th day of January, 1882, by means of which defendant sustained great damage by being deprived of great gains and profits which it would have received from the same, amount-

ing to the sum of $1000 ; that defendant was obliged to pay, lay out and expend large sums of money in the employment of an inspector to oversee said work, amounting to the sum of $394.37; that by means thereof, and by virtue of the terms of said contract, the defendants forfeited ten dollars per day as stipulated damages, and agreed that said sum of $394.37 so paid, laid out and expended by said defendant in the employment of said inspector, might be deducted by defendant from the contract price for the construction of said work.

Upon the issue so formed the cause was tried before Hon. Isaac H. Parrish, without a jury, on the 26th day of October, 1883, and judgment was rendered by said judge in favor of the said defendant and against the said plaintiffs.

Upon the trial of the cause the plaintiffs abandoned all claim except for rock excavation that had to be blasted, and the unpaid balance of $422. The judge made and filed findings, and found that plaintiffs did, in the prosecution of the work, encounter rock excavation which had to be blasted and took out 235½ cubic yards of such rock, and that it was worth four and one-half dollars per cubic yard to take it out, which would amount to $1059.75. He also found that the Board of Public Works took no action upon the forfeiture of ten dollars per day for the failure of plaintiffs to complete their contract within the time specified in the contract. He also found that the Board took no action with reference to deducting superintendent's wages from the contract price. He also found that the stipulated damages of ten dollars per day for not completing the work at the time agreed amounted to the sum of $300, and the superintendent's wages amounted to the sum of $306.37. But he found, as a matter of law, that the ten dollars a day for delay in the completion of the contract, and the matter of inspector's wages, not having been acted upon by the Board of Public Works, were not proper matters of account in this case. The court found, as a matter of law, that the claim of plaintiffs for rock excavation was included in the gross sum named in the contract, of $25,-547. The court also found, as a matter of fact, that defend-

ant contracted to pay for the work the sum of $25,547, and had paid of this sum $25,125, which would leave an unpaid balance of $422.   The court found, as a matter of set-off, that the value of the water used by the defendants from the city water-works in the construction of this sewer was the sum of $426.80.   The court also found, as a matter of law, that the claim made by the defendant for the use of water by the plaintiffs was legitimate matter of deduction from any claim of the plaintiffs in this action; and thereupon found no cause of action.

. This reduces the plaintiffs' objections to the findings of law to two propositions:   *First*. Was the finding that the plaintiffs were not entitled, under the contract, to extra compensation for taking out rock that had to be blasted, erroneous?   *Second*. Was the finding that the claim made by the defendant for the use of water in the construction by the plaintiffs of this work was a legitimate matter for deduction from any claim of the plaintiffs in this action, erroneous?

Section 7 of the Act authorizing the appointment of a board of public works in and for the city of Grand Rapids, provides that "in constructing sewers  *  *  *  said board shall advertise for sealed proposals to execute the work, and for materials, according to the plans and specifications adopted by said board, and may contract with the lowest responsible bidder:  provided, said board shall require security for the performance of proposals tendered to said board, if the bid is accepted, and security for the performance of contracts:  and provided further, it shall be at the option of the board to reject any or all bids or proposals made, and, if all bids are rejected, shall thereupon re-advertise for proposals to execute the work, and for materials, as often as may be necessary, unless some responsible party will take the contract at the lowest bid previously offered which the board may accept, if in their judgment for the best interest of the city."   In construing this section, with reference to contracting with the lowest responsible bidder, the word "may" must be construed as if it meant *shall*.   What the board is required to do is for the benefit of the public; the object

being to invite competition, and prevent favoritism and fraud in awarding contracts for public works. It was not the intention of the Legislature to leave it discretionary with the board whether the contract should be made with the lowest responsible bidder. It is required in all cases to advertise for proposals to do the work, and for materials, according to the plans and specifications adopted by the board. The only discretion the board is permitted to exercise is in rejecting bids. This may be necessary to prevent combinations among bidders, or, where the proposals are excessive, to protect the interests of the city. But if the bids are rejected, the board is required to re-advertise for proposals as often as may be necessary, unless some responsible party will take the contract at the lowest bid previously offered.

The statute, therefore, plainly requires the contract to be let to the lowest responsible bidder who shall give the required security, based upon bids made in pursuance of public advertisement. No other method of contracting by the board in behalf of the city is authorized. In preparing the plans and specifications for a public improvement, which the board of public works are authorized to make, it is the manifest duty of the board to give a detailed statement of the plan of the work, and of the kinds and quality of the materials required, for the purpose of affording to bidders data from which to estimate the cost of the work and materials, and inducing fair and honest competition. It may frequently happen, in the construction of sewers, that quicksand or rock may be encountered which would largely increase the cost of construction, the extent of which it may be impossible to ascertain in advance. In preparing specifications and contracts it may be proper to mention such contingencies, and to provide for payment for such extraordinary contingencies at what the extra work required is reasonably worth by the cubic yard. But such a course can never be necessary, where, by the exercise of reasonable diligence and suitable investigation by the city surveyor or other proper official, the condition of things affecting the cost of construction can be ascertained beforehand, and can be justified only because the

true condition of things cannot be thus ascertained. *Brady v. Mayor of New York* 20 N. Y. 317, 318.

If under the statute contracts can only be let to the lowest responsible bidder who will give the requisite security, it follows as a necessary consequence that no other manner of contracting can be legal, and any bid or contract which leaves the payment for substantial and material subjects as parts of the improvement contemplated, either in work or material, to be agreed upon by private arrangement or agreement between the board of public works and the contractor, is unauthorized, contrary to the express provisions of law, and void.

*Brady v. Mayor of New York* was an action by a contractor to recover the amount claimed to be due him for work under a contract entered into by the street commissioner in behalf of the city for setting curb and gutter stones, and flagging a portion of Eighty-third street. The charter required that "All contracts to be made or let by the authority of the common council for work to be done or supplies to be furnished, etc., shall be made by the appropriate heads of departments under such regulations as shall be established by ordinances of the common council," and "All work to be done and all supplies to be furnished for the corporation, involving an expenditure of more than $250, shall be by contract founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days, and all such contracts, when given, shall be given to the lowest bidder with adequate security." The advertisement for proposals required estimators to state, among other things, "the price per cubic yard for removing rock, if any should be found." The plaintiff put in a proposal at the following prices : "For setting curb and gutter stones, per lineal foot, forty-five cents ; for flagging, per square foot, eleven cents ; for rock excavation, per cubic yard, $25." A proposal from another bidder offered to excavate the rock at $5 per cubic yard ; but, excluding the rock excavation, plaintiff's bid was the lowest, and he was awarded the contract. The work was done, and amounted, at the contract price, to the following :

Curb and gutter, running feet 4046, . . $1,820 92
Flagging, square feet 15,686, . . . $1,725 46
Removing rock, cubic yards 943, . . $23,575 00

The cause was tried before a referee who found that the lowest bidder, upon the data given in the proposals, could not be ascertained, and held as matter of law that the contract was illegal and void as regards the rock excavation, because the *amount* of such excavation was not included among the data by which bids were to be tested. And this finding was concurred in both by the Superior Court at general term and by the Court of Appeals. Judge Denio, in referring to the provisions of the charter requiring the contract to be let to the lowest bidder, said " It was based upon motives of public economy, and originated, perhaps, in some degree of distrust of the officers to whom the duty of making contracts for the public service was committed. * * It does not require any argument to show that a contract made in violation of its requirements is null and void."

This case is cited by defendant's attorney as authority for the position that if the contract is to be interpreted as plaintiffs contend, it was illegal, because no bid was made for rock excavation. In the *Brady* case the price for removing rock, if any should be found, was called for in the advertisement, and was included in the bid, but the quantity was not ascertained, so that it could not be known what the work would cost at the contract price. In this case both quantity and price are omitted, and no data whatever exist from which to ascertain what would be the cost of the work so far as rock excavation is concerned. It was to be at a price to be named in the contract. By whom was the price to be named ? Was the board of public works to name it, or was the contractor, or was it to be a matter of agreement between them ? In either case there would be no competition, no bidding, no proposals and consequently no authority for the board to contract. If therefore an independent price for rock excavation had been agreed upon after the bid was accepted, and specified in the contract, the payment thereof could not have been enforced because of the illegality. If a failure to ob-

serve the law requiring contracts for doing the public work to be let to the lowest responsible bidder or if a partial compliance can be sanctioned, then there is no safeguard to the public interests in the requirement of the statutes. A small and comparatively unimportant portion of the proposed improvement may be advertised, and competition invited, and the great bulk be left to private agreement between the board and the contractor.

In *Bonesteel v. Mayor etc.* 22 N. Y. 162, it was held, under a charter requiring contracts to be let, after advertising for proposals, to the lowest bidder, that the proposals and specifications formed the only basis of any contract to be made for the work, or from which any request to the plaintiff to perform work could be implied. And the street commissioner having entered into a contract which departed from the specifications in two particulars, it was held that such modifications were unauthorized and void. The contractor failed fully to perform the contract, but did a large amount of work under it, and brought suit to recover compensation therefor; but the court held that he was not entitled to recover on the ground of contract, because there was no contract which he had performed; nor upon the quantum meruit, because there was nothing from which to imply a request to perform the work, unless either under the contract made by the proposals and specifications, which had not been performed, or under that which the street commissioner assumed to make, which was null and void. The court said : " It does not require any argument to show that a contract made in violation of the requirements of the charter is null and void. It is equally clear that a contract made in conflict with the authority granted is equally null and void.

In *Nelson v. Mayor etc.* 63 N. Y. 535, the plaintiff had furnished sewer-pipe upon a contract properly made, but unauthorized because it was not shown that any appropriation had previously been made covering the expenses contemplated by the contract, as required by law. The court, in discussing the case, proceeds to inquire whether or not the city would be liable upon a quantum meruit, and says :

" It does not follow, however, that though the contract be void the plaintiff would be entirely without remedy. If, as is alleged, the city has obtained his property without authority, but has used it and received the avails of it, it would seem that, independently of the express contract, an implied obligation would arise to make compensation. In the case of *Argenti v. San Francisco* 16 Cal. 255, it is said by Field, C. J., that " the doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake or without authority of law, it is her duty to refund it, not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or if used by her, to render an equivalent to the true owner. * * It has often been adjudged that if a city obtains money on a void bond, or for an illegal tax, or by mistake, and the money goes into the city treasury, the city can be compelled to refund. If it obtains property under a void contract and actually uses the property and collects the value of it from property owners by means of assessments, the plainest principles of justice require that it should make compensation for the value of such property to the person from whom it was obtained. The city, in such a case, however, should be held liable only for the actual value of the property, or what it obtained therefor, and would not be concluded by the contract price." But the decision was not placed upon this ground, the court holding that the contract had been validated by an act of the Legislature passed subsequently, and upon that ground the plaintiff was entitled to recover.

The point came directly before the Court of Appeals in *McDonald v. Mayor etc.* 68 N. Y. 23, where the action was brought to recover the value of certain stone and gravel alleged to have been sold and delivered by plaintiff to defend-

ant, and used in the repair of one of its streets. It was furnished at the request of the superintendent of roads, to whom the bills were given and certified by him to the street department. The material was used on the streets. They were not furnished upon sealed proposals upon public notice as required by the charter, and in other respects there was a disregard of the charter provisions. Folger, J., in deciding the case, says, " It is urged that the object of the expenditure was proper, as it is part of the defendants' corporate duty to keep public ways in repair; that the material was delivered to the superintendent of roads, an official of the defendant, charged with carrying that duty into practical effect; and that the plaintiff had reason to believe that the superintendent was acting within the line of his duties. The first two of these propositions may be admitted; the third may not be. Doubtless, to the apprehension of the plaintiff, the superintendent was so acting as to do work which it was the duty of the defendant to cause to be done. But we see nothing in the case which brought to his mind, so as to create a belief, that there had been a contract made for the material, as above indicated, or that the necessity for the expenditure had been certified to as required by law. * * * Nor can it be that the provisions of the statute are alone for the instruction of the department and officials of the defendant. They were a restraint upon them, but upon other persons as well. They put upon all who would deal with the city the need of first looking for the authority of the agent with whom they bargain; * * * they are a limit upon the powers of the corporation, inasmuch as they prescribe an exact mode for the exercise of the power of expenditure. * * * It is fundamental that those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority. * * * But the main reliance of the plaintiff is upon the proposition that the defendant, having appropriated the materials of the plaintiff and used them, is bound to deal justly, and to pay him the value of them. The case of *Nelson v. The Mayor* 63 N. Y. 535, is cited. The

learned judge who delivered the opinion in that case does, indeed, use language which approaches the plaintiffs' proposition; but the judgment in that case did not go upon the doctrine there put forth; and when the opinion is scrutinized, it does not quite cover this case." The learned judge then proceeds to show that where the statute provides that all contracts shall be in writing, there is no room for saying there can be an implied contract; that where the statute which continues the corporate life of the municipality, and gives it its powers, and prescribes the mode of exercise of them, says that its contracts shall be in writing, it cannot be liable upon an implied promise; and he pertinently says: "Restrictions and inhibition by statute are practically of no avail, if they can be brought to naught by the unauthorized action of every official of lowest degree, acquiesced in or not repudiated, by his superiors."

In *Parr v. Village of Greenbush* 72 N. Y. 463, 472, action was brought to recover for grading, and furnishing sand and gravel, under a resolution of the trustees authorizing the work to be done. The charter required contracts to be let to the lowest bidder after advertising for proposals. The plaintiff performed the work and furnished the materials, amounting to over $6000. The court said: "A person contracting with public officers must take notice of their powers. He is charged with knowledge of the law, and he makes a contract in violation of law at his own risk. When the law commands public officers, before entering into contracts, to advertise, and contract with the lowest bidder, a contract made without advertising and without competition is wholly illegal, and imposes no obligation upon the public body assumed to be represented. Laws of this character, imposing restraints upon public agents, have been found to be necessary and beneficial, and public policy requires that they should be rigidly inforced. But the claim is made that as the work and materials were furnished, and the village has received some benefit from them, it is under an implied obligation to pay what they were worth. If this were so, the law could always be easily evaded; that it is not so is no

longer an open question in this Court;"—citing *Brady v. City of New York* 20 N. Y. 312; *McDonald v. Mayor* 68 N. Y. 23. To the same effect, also, are the following cases: *Smith v City of Newburgh* 77 N. Y. 136; *Brown v. Mayor* 63 N. Y. 242; *Peterson v. Mayor* 17 N. Y. 449; *Hodges v. City of Buffalo* 2 Den. 110. See also Dill. Mun. Corp. §§ 938, (750), 447, (372), 449, (373), and note 1.

In *Argenti v. City of San Francisco* 16 Cal. 255, Mr. Justice Field held that there was no implied contract in that case; that the proposals made pursuant to advertisement and the acceptance thereof by defendant constituted an express contract; that independent of such contracts, he did not consider any liability would attach to the city for the improvement of streets; that a municipal corporation can only act in the cases and in the mode prescribed by its charter; and for street improvements of a *local* nature, express contracts authorized by ordinance are necessary to create a liability; that the doctrine of implied liability, as upon implied contracts, has no application to cases of this character. That doctrine applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same; that the money must have gone into her treasury, or been appropriated by her, and when it is other property it must have been used by her, or be under her control. "But," he adds, "in reference to services rendered the case is different. Their acceptance must be evidenced by ordinance to that effect; their acceptance by the city, with the consequent obligation to pay for them, cannot be asserted in any other way. If not originally authorized, no liability can attach upon any ground of implied contract. The acceptance upon which alone the obligation to pay would arise, would be wanting."

I fully approve of the opinion of Chief Justice Field above cited, and think it expresses a correct statement of the law which should govern this class of cases.

This claim is for services rendered in excavation of rock. The finding of fact does not show that these services were ever

accepted by the city authorities. The only body competent to accept them would be the Board of Public Works. They are required by the law to keep a record of their proceedings (section 22), and such record would be the only competent evidence of such acceptance. It is very doubtful whether, if a record of the acceptance of the job could be shown, it could be construed as an acceptance of the claim for extra services for rock excavation; but as neither acceptance is embraced in the findings of facts, the question is not before us.

It is urged on the part of the plaintiffs that the Board of Public Works advertised for proposals according to the plans and specifications on file, and that their proposal was based upon such plans and specifications, and that when they came to examine the specifications they found the following:

"Solid rock ledge excavation, which cannot be removed without blasting, will be paid for by the cubic yard at a price named in the contract. The rock excavation to be measured with side slopes of one-quarter of a foot to one foot vertical, and width at the bottom of the sewer as follows: South of Seventh street, 4.50 feet; from Seventh street to Eleventh street, 3.75 feet; from Eleventh street to W. Leonard street, 3.25 feet; from W. Leonard street to Myrtle street, 2.00 feet; and north of Myrtle street. 1.25."

That by this they were fairly apprised that there would be rock excavation, which, if solid ledge requiring blasting, would be paid for by the cubic yard at a price named in the contract. In the advertisement for proposals the Board of Public Works require that all proposals shall be upon blanks furnished by the Board. The proposal itself is given in the record, and the form does not seem to provide for itemized bills, but only for a gross sum. The proposal in this case was as follows:

"To the Board of Public Works for the City of Grand Rapids—GENTLEMEN: The undersigned propose to do all the work of constructing the extension of the Winter street sewer up Broadway street in the city of Grand Rapids, and furnish all the material therefor, and do all incidental work connected therewith, and furnish all the material for such in-

cidental work, according to the plans and specifications for the same adopted by your Board, for the sum of twenty-five thousand five hundred and forty-seven dollars (25,547.00), payable out of the special fund to be raised to defray the expense of said work and material by the common council of said city.

And we hereby agree to enter into a contract in that regard within five days from the date of your acceptance of this proposal, to finish and complete said work according to the forms of contract now in use by you for the doing of such work, and will furnish such sureties for the performance of such contract as shall be approved by your Board. In default of any of these conditions on our part, the sum of one hundred dollars, which we have this day deposited with the clerk of the Board of Public Works, shall, at the option of said Board of Public Works, be absolutely forfeited to the city of Grand Rapids; but otherwise said sum of one hundred dollars shall be returned to us.

No. 1.                                    JAMES McBRIAN.
                                          D. S. BOOTH.

Companies or firms bidding for the above-described work must give the individual names of the persons comprising such company or firm.

No bid will be considered by the Board unless the sum of one hundred dollars shall first have been deposited with the clerk of the Board."

How far this may have misled the plaintiffs with reference to the clause in the specification above quoted it is impossible to say. If we could hold a party dealing with a municipal corporation to be under no obligation to inquire as to the extent of authority, or as to limitation upon their power to contract, and if the party could be permitted to set up his ignorance of such authority or limitation of power as a sufficient excuse why he should not be bound by such limitation and want of authority, then it might be said that plaintiffs were misled by the form of proposal and by the terms of the specification, and were led to believe that the rock excavation would be paid for extra, over and above the sum bid for doing the job. But the law holds those dealing with a municipal corporation to a knowledge of the extent of the authority conferred, and of the mode of its exercise, and of all illegalities committed by its agents in not pursuing the authority

in the manner pointed out, and visits upon them the consequences of violating the law by refusing to enforce such contract at their instance. And the plaintiffs must be held to a knowledge that the rock excavation not having been submitted to competition among bidders, the clause in the specification agreeing to pay therefor by the cubic yard at a price to be named in the contract was of no binding force, and the legal presumption arising therefrom is that their proposal to do all the work of constructing the extension of the sewer, including all incidental work and materials therefor, for the sum of $25,547, was intended to cover the removal of rock by blasting, if any should be encountered in the prosecution of the work.

On the trial the learned judge admitted evidence, against objection made by the plaintiffs' counsel, of what was said by one of the plaintiffs previous to his submitting his proposal about what he would do if he found rock, and also of the president of the Board of Public Works, as to why no price for rock excavation was inserted in the contract. This plainly was error. The intent must be gathered from the contract and annexed specifications, and the construction to be given thereto was for the court. We think the case should not be reversed for this error, for the reason that the contract itself fully supports the finding of fact, and the conclusion of law based thereon, without reference to the testimony erroneously introduced. The finding of fact must necessarily have been the same had the testimony been excluded.

Nor do we perceive any error in admitting testimony of the amount of water used by plaintiffs, or in allowing the value as found by the judge, based upon the estimate of the city surveyor, to stand as an offset in this case. In the specifications, which were made a part of the contract, it is provided that " Water taken from the city pipes must be paid for at the rate of twenty cents for each one thousand gallons, and must be taken in accordance with such regulations as the Board may make, the amount to be determined by the city surveyor."

The parties to the contract and to the suit are the same. The amount is capable of liquidation. The Board of Public Works is a mere agency of the city. They do not own the water-works, nor the revenues derived therefrom. The law requiring all moneys received from the use of water supplied to citizens to be paid into the city treasury does not prevent the court from allowing the set-off. It would be a mere matter of transfer of the amount allowed as set-off, equal to the balance due upon the contract, upon the city treasurer's books, from the special fund provided for the purpose of constructing the sewer in question, to the appropriate fund; all of which is within the control of the common council.

The judgment must be affirmed.

SHERWOOD, J. concurred.

CAMPBELL, J. I am of opinion that by the terms of the contract between plaintiffs and defendant the price for rock-cutting, as well as all the other elements of the public work to be constructed, became included in the gross sum which was agreed upon as the consideration to be paid. This being so it cannot be important in this suit how far such an item could be lawfully contracted for except at a fixed or definite rate, and I prefer to express no opinion upon it. It is not competent to make agreements without compliance with the charter. But where from the nature of an undertaking there must be some difficulty in determining in advance the things which may become involved in its execution, the interests of all parties may require some flexibility in the provisions, and some scope for choice in the biddings. It would be difficult to determine these limits as a legal question in the absence of facts requiring it.

While I concur in the disposition to be made here of the judgment below, I reserve my views on the questions referred to.

COOLEY, C. J. concurred with CAMPBELL, J.