JOSEPH PALLADINO, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

*Municipal work — contract for the grading of a street — removal of the soil by a third party, between the time of the making and of the execution of the contract — the city not liable therefor.*

In an action brought to recover for work done in the grading and paving of a public street, under a contract entered into between the plaintiff and a municipal corporation, it appeared that the work was done pursuant to a contract for which sealed bids were received, made in response to proposals therefor; that when the proposals were published, the earth included within the line of the proposed street had not been disturbed or removed, and was sufficient to bring it up to the required grade; but thereafter, and in the same year, a large part of the earth, which was capable of being used to fill the lower portion of the proposed street up to the prescribed grade, had been taken and carried away, and it was for the expense of furnishing the amount of earth used for this filling that the claim was made by the plaintiff. It did not appear that the earth had been

removed by any person acting in the employment of the city, the defendant in the action, or under its authority, or even with its knowledge.

*Held,* that, under these circumstances, no right of compensation, because of the removal of the earth within the lines of the proposed street, existed as against the defendant.

The specifications for the work provided that that "portion of the street which is above the grade lines is to be excavated, and such and so much of the material excavated as may be fit for the purpose, and as may be necessary, shall be filled in those parts of the street which are below the grade lines in the manner here_ inafter provided, * * * if the amount of material excavated that is fit for filling shall not be sufficient to regulate the street, the contractor shall furnish and supply material of proper kind and quality sufficient for the purpse; but only the difference between the total quantity of filling to finished grade and line as shown in cross-section, and the total quantity of excavation to the finished grade and line as shown in cross-section, with slopes in each case, as herein described, will be considered as filling to be furnished, and as such to be paid for."

The contract contained no provision for payment for filling, but did contain provisions to the effect that the contracter, at his own cost, should provide materials and labor and complete the entire work to the satisfaction of the commissioner of public works, and that he would not ask, demand or sue for any extra compensation beyond the amount payable for the several classes of work in the contract enumerated.

*Held,* that as the filling up of the avenue, although no compensation was fixed therefor in the several classes of work referred to in the contract, was necessary for the completion of the work, that the contractor was not entitled to recover extra compensation therefor.

That the plaintiff could not recover because of any direction, given to him by any officer of the corporation, to obtain and use the filling in question, as no officer had power to bind the defendant by giving such direction.

APPEAL by the defendant, the Mayor, Aldermen and Commonalty of the City of New York, from a judgment, entered in the office of the clerk of the county of New York on the 19th day of November, 1889, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for the sum of $5,102.07.

*John J. Townsend,* for the appellant.

*L. Laflin Kellogg,* for the respondent.

DANIELS, J. :

The action was brought to recover the amount claimed to be unpaid for regulating and grading Fort George avenue, from Tenth

to Eleventh avenues, and setting curb-stones and flagging sidewalks therein. The work was let by a contract, executed by the commissioner of public works and James H. Sullivan, on or about the 17th of August, 1886. And after it had been in part performed the contract was assigned to the plaintiff, who completed the work. His claim consisted of two items. The first was for money retained by the city from the contract-price, amounting to the sum of $432.02. And the other was for the value or cost of material used for filling on the avenue to bring it up to the grade adopted for the improvement. It was claimed on behalf of the defendant that it was entitled still to retain the balance remaining unpaid upon the contract-price of the work, because of proceedings taken to establish a lien against the contractor by other persons. But the evidence tended so directly to prove that this lien had been satisfied as to leave no substantial reason for doubting the right of the plaintiff to recover the amount of this balance. And, accordingly, the verdict of the jury in his favor for that sum, together with the interest upon it, should not be unnecessarily disturbed.

But the claim made by the plaintiff for filling furnished by him to raise the street to the grade prescribed stands upon different grounds. For, by the terms of the proposals for the contract, no material of this description was included or required to be furnished. But the entire work, as proposals were invited for it, consisted of earth and rock to be excavated, curb-stones to be furnished and set, and flagging stones to be furnished and laid. The amount of this work and materials were included in the published proposals. But no material for filling was mentioned nor required to be estimated which should be obtained or supplied by the person whose proposals should be accepted for the performance of the work.

The work was ordered by a resolution adopted by the aldermen on the eleventh, and approved by the mayor on the eighteenth of May, 1885. And this work was directed to be done under the direction of the commissioner of public works. And sealed estimates for this work were invited by a notice published in the early part of July, 1886, as the charter required that to be done. When the resolution was approved by the mayor, the earth included within the line of the avenue to be regulated and graded had not been disturbed or removed. But after that, and in the year 1885, a large part of the

earth in the avenue which was capable of being used to fill the lower portions of it up to the prescribed grade had been taken and carried away. This was alleged to have been done through the act, default and neglect of the defendant, its officers and agents. And the plaintiff, as the assignee of the contract afterwards entered into for the grading and improvement of the avenue, insisted that the city was responsible to him for the removal of this earth. But it appeared by the evidence that it was not so removed by any person acting in its employment or under its authority, or even with its knowledge. But the persons who removed it were trespassers, having no right whatever to take it, and were themselves alone liable for the wrong in this manner committed. Upon these facts, therefore, no right of compensation for the earth removed within the lines of the avenue existed against the defendant.

It was further insisted, on behalf of the plaintiff, that he was entitled under the contract to recover the value of the earth obtained by himself from other localities and used in filling the avenue up to its requisite grade. This claim proceeded upon the ground that it was mentioned in the specifications, which were inserted in the contract, that the "portion of the street which is above the grade lines is to be excavated and such and so much of the material excavated as may be fit for the purpose, and as may be necessary, shall be filled in those parts of the street which are below the grade lines in the manner hereinafter provided; the material excavated not so used for filling shall be removed from the street; if the amount of material excavated that is fit for filling shall not be sufficient to regulate the street, the contractor shall furnish and supply material of proper kind and quality sufficient for the purpose, but only the difference between the total quantity of filling to finished grade and line as shown in cross section, and the total quantity of excavation to the finished grade and lines as shown in cross section, with slopes in each case as herein described, will be considered as filling to be furnished and as such to be paid for."

And the contract itself declared that, "for any work, the price of which is not specified in this contract, the provisions herein contained in relation to work not provided for in this contract shall apply." But no other provision appears to have been inserted in the contract relating to this subject, beyond that which was made a

part of the specification. And while the difference in the quantity of filling, exceeding that supplied by the earth taken from the avenue itself, is stated to be considered as filling to be furnished, and as such to be paid for, there is yet no provision in the contract binding the defendant to make such payment, but, on the contrary, it was agreed by the contractor that he would receive in full for his compensation for furnishing all the materials and labor for, and the faithful performance of the whole of the work mentioned in the agreement, the following prices:

" For excavating earth, per cubic yard, the sum of twenty-seven (27) cents.

" For excavating rock, per cubic yard, the sum of ninety-five (95) cents.

" For furnishing and setting new curb-stone, per linear foot, the sum of sixty-seven (67) cents.

" For furnishing and laying new flagging, per square foot, the sum of thirty-one (31) cents."

And by a preceding part of the agreement, it was also agreed by the contractor that he would, " at his or their own cost and expense, furnish and provide all the materials and labor for the purpose, and regulate and grade Fort George avenue from Tenth to Eleventh avenue, and set curb-stones and flag sidewalks therein." And that he would " complete the entire work to the satisfaction of the Commissioner of Public Works and in substantial accordance with said specifications and the plan therein mentioned, and that he will not ask, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the several classes of work in this contract enumerated, which shall be actually performed, at the prices therefor herein agreed upon and fixed."

It was further declared that " This contract is made with reference to the proposals for estimates for the above described work, hereto annexed, which are to be taken as part and parcel of these presents." And in and by the proposals it was stated " That no extra compensation beyond the amount payable for the several classes of work before enumerated which shall be actually performed, at the prices therefor to be specified by the lowest bidder, shall be due or payable for the entire work." And, also, that " Work or materials not

specified, and for which a price is not fixed in the contract, will not be allowed for."

The contract is not entirely harmonious and consistent in its stipulations and statements, but the intention to bind the contractor to furnish the materials and perform the labor for the prices contained in the contract appears to be predominant. For he was obliged to agree, as a part of the terms upon which he received the contract, that he would not ask for, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the several classes of work in the contract enumerated. And that no extra compensation beyond the amount payable for the classes of work enumerated should be due or payable for the entire work. And that all the materials and labor required for the work should be supplied and performed by the contractor. These stipulations and provisions are clearly and definitely expressed. And so are those adjusting and prescribing the prices to be received in full compensation for all the materials and labor and the faithful performance of the whole work mentioned in the contract. And filling the avenue up to its prescribed grade was a necessary part of that work. These stipulations and provisions, expressed in this definite manner, overcome and control the general language employed in the specifications as to the filling to be furnished and paid for, and in the contract itself for any work the price of which was not specified. For they distinctly obligated the contractor to do all the work and supply all the necessary material for it for the compensation mentioned in the agreement, and without any claim for extras upon his part.

But if the contract, from this general language employed in the specifications, and relating to any work the price of which was not specified in the contract, should be held to be controlling as to the intention of the agreement, the effect would still remain the same. For by the law, as it was in force at the time when the agreement was made, and as it still remains, the commissioner of public works was required to advertise for proposals for the work and to let the contract to the lowest bidder. This imperative regulation was prescribed by section 91 of article 16, chapter 335 of the Laws of 1873. And it was afterwards, by section 64, made a part of chapter 410 of the Laws of 1882. By this enactment it was pro-

vided that " Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars, the same shall be by contract under such regulations concerning it as shall be established by ordinance of the common council, excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract, and unless otherwise ordered by a vote of three-fourths of the members elected to the common council. And all contracts shall be entered into by the appropriate heads of departments, and shall, except as herein otherwise provided, be founded on sealed bids or proposals made in compliance with public notice duly advertised in the City Record, said notice to be published at least ten days. And all such contracts when given shall be given to the lowest bidder, the terms of whose contracts shall be settled by the counsel to the corporation as an act of preliminary specification to the bid or proposal." It has been suggested, in support of the right of the plaintiff to recover as he did at the trial for the filling obtained and used by him from other sources than the avenue, that this work may have been ordered to be done, otherwise than by contract, by a vote of three-fourths of the members elected to the common council. But that fact cannot be assumed in his favor. It was not alleged in the complaint that such an order or resolution had been adopted. But, on the contrary, the proposals were invited and the contract entered into in apparent conformity to the requirements of the law, where no such resolution should be, or had been, adopted by the common council. And the case was tried and disposed of upon the theory that the plaintiff's right to compensation for the filling in this manner obtained and supplied depended upon the provisions of the contract, if it could not be maintained because of the removal of the earth from the line of the avenue after the passage of the resolution and before the notice was published by the commissioner of public works. And it is upon that theory that the plaintiff is left to maintain his right to this recovery, if it can be maintained at all.

It was proved upon the trial that, by the revised ordinances of 1880, adopted after the enactment of the law of 1873, the proposals

for estimates should contain, among others, a statement of "the quantity and quality of supplies, or the nature and extent, as near as possible, of the work required." But the proposals which were published in no manner included material to be supplied by the contractor for the filling of the avenue beyond that which might be excavated in the performance of the work. And no estimate was made and no contract proposed to be entered into for supplying or paying for such filling. And as the amount for which the plaintiff claimed, and the proof tended to establish he had furnished, exceeded the sum of $1,000, the law required that it should be included in the advertised proposals for estimates before a contract could be authorized for supplying and paying for it. And that it was not expected that the contractor furnishing estimates, and afterwards receiving a contract under the advertised proposals, would be compensated for such filling, was entirely evident from the proposals themselves as they were published. And that such additional filling might become necessary must have been obvious to the contractor before he submitted his estimates, for the proof established the fact that the land included in the avenue exhibited the previous removal of the earth, amounting in quantity, according to the statements of the plaintiff, to about 5,300 cubic yards. And it was with this knowledge which had been, or readily could have been, acquired by the contractor, that the estimates were made and the contract was taken. And it would be a violation of the mandatory provisions of the statute to permit a recovery by the plaintiff for the value of this filling under the facts and circumstances in this way presented. If that could be done, then any other part of the work or material included in the improvement could likewise have been omitted, and the defendant rendered liable to pay for the labor and materials used in performing it. And thereby the restraints and directions of the statute would be as thoroughly disregarded as though it were in the plainest language repealed. If the courts may disregard it in one particular, they may in another; and as consistently defeat it altogether by sanctioning a recovery for work done and material supplied in total violation of its provisions. And that the court has no authority to do. But its duty is to enforce and maintain the law without regard to the consequences which may be encountered by the contractor or his assignee, who were alike chargeable with knowledge or notice

of the restraints imposed upon the officials of the city by these requirements of the statute. (*Kernitz* v. *Long Island City*, 50 Hun, 429 ; *Syracuse Water Co.* v. *Syracuse*, 116 N. Y., 167.)

It was, it is true, stated in the opinion in *Nelson* v. *Mayor* (63 N. Y., 535), that such a recovery might be maintained. But the case ultimately was decided upon another ground. And in *McDonald* v. *Mayor, etc.* (68 N. Y., 23), this decision was reviewed. And it was there considered and held that a recovery could not be secured for work or material supplied to the city in violation of the restraints of these provisions of the charter. And the same principle was sustained in *Brady* v. *Mayor, etc.* (20 N. Y., 312), and *Matter of Merriam* (84 id., 596). And it was in no manner involved or questioned either in *Poillon* v. *Brooklyn* (101 N. Y., 132, 135), or *Reilly* v. *Mayor, etc.* (111 id., 473). In the last case the contractor was permitted to recover for excavating rock, notwithstanding a mistake concerning the quantity to be excavated in the performance of his work, which was unknown to the officials of the city, but was understood by himself. This case is an authority rather in favor of the defendant than of the plaintiff, for if the city should be obliged to perform, notwithstanding its mistake as to the amount or quantity of rock to be excavated, the contractor and his assignee should, in this instance, be equally bound by their agreement, if the proposals were made and the contract entered into by reason of a mistake as to the amount of earth which could be taken from the work and made available for filling up the low parts of the avenue. The case of *Mullholland* v. *Mayor, etc.* (113 N. Y., 631) applied only to deviations in the performance of the work, and has no application to this controversy. Neither has any of the other authorities, which have been cited and relied upon for the purpose of sustaining this recovery.

So far as that was permitted at the trial, it was in conflict with the law whose provisions are required to be enforced against the plaintiff. Neither he nor the contractor who assigned the contract to him was bound to accept the contract without a proposal and an agreement relating to the filling. But they voluntarily did this with the ability directly at hand to estimate and ascertain the amount of additional material which might become necessary to bring the avenue up to its prescribed grade beyond that which could be obtained from the

land included within its limits. It is highly probable that knowledge of this fact had been acquired, as it could be, by an observation of the locality over which the work was to be done. But whether it had or not, the law provided for but one mode, in the absence of a vote of three-fourths of the members elected to the common council, and the city could only become obligated by a compliance with or observance of that mode. And that was neither complied with or observed in this instance. The duty to which the counsel to the corporation has been subjected to settle the terms of the contract can in no manner change the rights or obligations of these parties. The most he could do was to provide a contract to carry into effect the provisions of the law so far as it was applicable to this work. He had no power to disregard its injunctions and requirements, and the contract can in no manner be enlarged because of this direction, neither can the plaintiff derive any advantage from any direction given to him by any officer of the corporation to obtain and use this filling, for no officer had power to bind the defendant by giving that direction. If it was given by any person and the plaintiff acted under it, he must look to that person for his compensation, and not to the defendant. (*Burns* v. *Mayor, etc.*, 5 N. Y. Sup. Ct. [T. & C.], 371.)

The judgment and order should be reversed and a new trial directed, with costs to the defendant to abide the event, unless within twenty days after notice of this decision the plaintiff shall stipulate to deduct the sum of $4,200 and interest allowed thereon; and if such stipulation shall be given, then the judgment as so reduced should be modified and affirmed, without costs of this appeal to either party.

Van Brunt, P. J., and Brady, J., concurred.

Judgment and order reversed and new trial ordered, with costs to defendant to abide event, unless stipulation mentioned in opinion is given; if such stipulation is given, then the judgment, as reduced and modified by opinion, affirmed, without costs of this appeal to either party.