■ In the Matter of OLEAN STANDARD EQUIPMENT CO., INC., Appellant, v. CATTARAUGUS COUNTY BOARD OF SUPERVISORS et al., Respondents.— Order, and judgment entered thereon,. unanimously reversed on the law and the facts with costs, and relief granted in accordance with the following Memorandum: Petitioner appeals from an order of Cattaraugus Special Term, which, after a trial, dismissed its article 78 petition to annul a resolution of respondent Board of Supervisors that accepted the bid of respondent Mosler Safe Company to furnish and install counters and equipment described in articles 2 and 3 of its specifications. The specifications were prepared by Chief Engineer Sundquist of Mosler's subcontractor APF Industries. He was retained pursuant to a resolution of the board adopted December 9, 1966, authorizing an agreement with a qualified design consultant to formulate specifications for submitting furnishings and equipment to bid. APF manufactured counters and equipment for court houses and was listed as a subcontractor on the Mosler bid. It also had an agreement with Mosler whereby Mosler was the exclusive seller and distributor of its products to banks. The specifications for the bid in question provide in part: "All work shall be done under the general supervision of the Design Consultant * * * [who] shall decide any and all questions which may arise as to the quality and acceptability of materials furnished, work performed, rate of progress of work, interpretation of Drawings and Specifications and all questions as to the acceptable fulfillment of the Contract * * *. All samples * * * required by the Design Consultant shall be furnished * *, *. The Contractor shall abide by the Design Consultant's judgment when proposed substitute materials or items of equipment are judged to be unacceptable * * *. The Design Consultant will approve or disapprove proposed substitutions". On March 16, 1967 the Board of Supervisors advertised for bids to be submitted on April 5, 1967. On April 1, 1967 appellant's attorney notified the Chairman of the Board's Building Committee that the Design Consultant, Sundquist, was an officer of APF Industries, a subcontractor for Mosler, and that the letting of a contract would be illegal under section 103 of the General Municipal Law because of the relationship between Sundquist, APF and Mosler and because of Sundquist's conflicting loyalties and his broad powers. This letter was not answered and no statement was made during the bidding period that Sundquist would be replaced. Fearing that Sundquist would require it to adhere strictly to the specifications, petitioner's bid was based on the higher cost of special equipment which would strictly conform to the specifications rather than a lower cost standard line of equipment which would generally conform. The question presented is whether, under the circumstances as they appeared to prospective bidders during the bidding period, the free competition inherent in competitive bidding, required by section 103 of the General Municipal Law, was impaired. The answer to this question does not depend upon a determination that Sundquist would or would not be retained as design consultant during performance of the contract or upon a determination that he would or would not use the powers of his position to the advantage of Mosler or to the disadvantage of its competitors. If bidders were under reasonable apprehension that the contract would be supervised by a design consultant so associated with one bidder as to favor it, the free competition inherent in competitive bidding would be impaired. From the fact that Sundquist was the design consultant when the bids were let and the fact that no other person had been retained or considered to replace him during execution of the contract, it was reasonable for prospective bidders to infer that he was the design consultant referred to in the specifications. This inference is

bolstered by the failure to refute petitioner's understanding stated in the letter to the chairman of the building committee. Prospective bidders might further infer that, because of Mosler's association with Sundquist, it might know in advance of bidding what substitute materials would be judged to be acceptable. Open competitive biding was impaired, in this case, by the reasonable apprehension of prospective bidders that performance of the resulting contract would be supervised by Sundquist and that he might exercise his powers under the specifications favorably to Mosler, if it obtained the contract, and unfavorably to its competitors, if they secured it. The contract awarded to Mosler is, therefore, void and should be annulled because, under these circumstances, it violates the requirements of section 103 of the General Municipal Law. (*Brady* v. *Mayor of City of N. Y.* 20 N. Y. 312; *Gerzof* v. *Sweeney*, 16 N Y 2d 206, 208; 10 *McQuillin, Municipal Corporations* [3d ed., 1966] § 29.29, p. 324.) Respondent Board of Supervisors, if it desires to proceed with the project, should retain a design consultant who is independent of any potential bidder, and advertise for bids in accordance with section 103 of the General Municipal Law. (Appeal from order of Cattaraugus Special Term dismissing petition to set aside contract.) Present — Williams, P. J., Bastow, Marsh, Witmer and Henry, JJ.