# Cases

# THIRD DEPARTMENT

AT

# GENERAL TERM

## November, 1891.

---

## THE A. C. NELLIS COMPANY, Appellant, v. ARTHUR C. NELLIS, Respondent.

62h 63
f 51ad 261

*Estoppel — loan, forbidden by statute, made by a corporation to a stockholder — sale of collaterals not an estoppel or ratification — not inconsistent with an action for conversion — Laws of 1848, chap. 40, sec. 14.*

The president, who was a stockholder and practically controlled the management of a corporation, organized under chapter 40 of the Laws of 1848, induced the treasurer of the company to loan to him, upon his notes secured by the pledge of his stock in that company as collateral thereto, moneys belonging to the corporation, in excess of the value of the stock so pledged. The treasurer of the corporation had been authorized by the board of trustees thereof to loan its surplus moneys to its advantage, taking good and sufficient security for such loans.

By section 14 of the act of 1848 the corporation was forbidden to loan its money to a stockholder thereof; and subsequently to this loan having been made to the president, who was a stockholder of the company, the loan was called in and the stock pledged as collateral thereto was sold, the amount realized therefrom representing less than fifteen per cent of the amount of the loan.

In an action brought by the company against its president to recover the amount of such loans, less the amount obtained by the sale of the stock, it was alleged in the complaint that he had illegally converted to his own use the moneys which had been so loaned to him:

*Held,* that the loan was illegal, being forbidden by the statute.

That what the trustees could not lawfully do they could not subsequently ratify.

That their sale of the hypothecated stock, made to reduce their loss resulting from the defendant's unlawful conversion of their property, was not a ratification of the loan and that it did not estop them from suing for such conversion.

That the trustees were not bound to restore the stock before action, for the defendant was, in any event, bound to return the money of the company whether he had obtained it in defiance of the statute or as an ordinary borrower.

That such sale of the stock had not injured the defendant or altered the position of the parties, and that the company had not thereby elected to adopt a remedy inconsistent with the present action. (MAYHAM, J., dissenting.)

APPEAL by the plaintiff, the A. C. Nellis Company, from a judgment, entered in the office of the clerk of the county of Montgomery on the 24th day of February, 1891, dismissing the complaint, with costs, after a trial at the Montgomery Circuit before the court and a jury.

This action was prosecuted to recover ten thousand dollars ($10,000) for the alleged wrongful conversion by the defendant of certain moneys belonging to the plaintiff.

The complaint alleged the incorporation of the plaintiff, under the act authorizing the formation of corporations for manufacturing, mining, mechanical and chemical purposes, and that the defendant was a trustee and stockholder in such corporation, and charged that, in violation of his duty as such trustee and stockholder, and without lawful authority therefor, the defendant took, received, fraudulently misapplied and converted to his own use the money of the plaintiff, in the aggregate to the amount of $7,150.

The answer admits the existence of the corporation, and that defendant was a trustee and stockholder in the same, and alleges that the plaintiff loaned the money specified in the complaint to the defendant, took and held his notes for the same, with 1,200 shares of stock in the company belonging to the defendant as collateral to such loan, and that the defendant had paid the interest and part of the principal on such loan, and that before the commencement of the action plaintiff had called such loan and advertised and sold the stock held as collateral to such loan, and had received and retained the proceeds of the sums realized on such sale.

The evidence disclosed that the defendant had held a majority of all of the stock of the company, and was, at the time of the alleged taking of the money, the president of the company and a member of the board of trustees. That before the receipt of the money by

the defendant the board of trustees, by resolution, authorized the treasurer to loan the moneys of the corporation held in bank on good security. This resolution was passed July 23, 1886, and the treasurer of the corporation thereafter, and on or prior to July 24, 1886, loaned to the defendant $6,000, taking his note, dated on that day, payable on demand, and on return of the collaterals, and at the same time received as collateral to such loan 1,000 shares of the capital stock of this company; and on the nineteenth day of August the treasurer, upon a like note and 200 shares of the capital stock as collateral thereto, made another loan to the defendant of $1,150. The money was drawn by the defendant on the check of the treasurer for the amount of these loans. For the conversion of the money represented by these transactions this action was brought. Upon these undisputed facts the trial judge dismissed the complaint.

*Bacon, Leeds & Van Steenburgh,* for the appellant.

*Wilmot & Gage, Z. S. Westbrook* and *H. V. Borst,* for the respondent.

LEARNED, P. J.:

This is an appeal by plaintiff from a judgment dismissing the complaint before the conclusion of the plaintiff's testimony. The plaintiff is a corporation, under the act of 1848, for carrying on the seed business; capital, $50,000, divided into 2,000 shares, twenty-five dollars each. The defendant originally had 1,200 shares. The buidings were destroyed by fire in June, 1886, and about $23,000 was received in cash from the insurance thereon before the annual meeting in July, 1886.

There was evidence that prior to this meeting the defendant had agreed to make one Howland and one Dunning trustees, and to make Howland treasurer at a salary of $7,000; that Howland was to lend money to defendant, " and fix it in such a way that it would not be visible on the books and still appear to be all legal." At this meeting defendant stated that he had been obliged to raise money and had sold some stock to Howland and Dunning on condition that they should be made trustees. This was done. The business was moved to New York, and from that time defendant was the active manager, or, as the trustees said, "he was the company

in effect." At a meeting of the trustees in New York, July 23, 1886, defendant was present, and was elected president; Howland, treasurer. It was voted : "There being a larger cash balance in the bank than will be required to be used in the business for a long time, resolved, that the treasurer be authorized to loan such surplus as in his judgment is to the advantage of the company, taking good and sufficient collateral security for the amount so loaned." Howland, as treasurer, gave defendant checks of the company as follows : July twenty-fourth, $2,000; July twenty-eighth, $1,000; August fourth, $3,000; August nineteenth, $1,150. These checks were drawn to order of cash. The stub was marked " on account of loan;" the name of the borrower not given. On the books the amounts are charged to cash for bills receivable, from whom is not stated. July 24, 1886, defendant made his note to plaintiff's order for $6,000, stating that there was deposited as collateral 1,000 shares of the stock of the company. August 19, 1886, he gave another similar note for $1,150, reciting the deposit as collateral of 200 shares of the same. This is all the stock defendant had ever held. There are other circumstances tending to characterize the transactions as fraudulent. This pretended loan to defendant was plainly not authorized by the vote of the board. This was not a loan on good and sufficient security ; and defendant must have known this, as is evidenced by the concealment of the transaction and other proof. In April, 1889, some of the stockholders having heard of these transactions had an interview with defendant, in which he admitted the transactions and produced the notes from an iron box in the safe, which was locked, and to which he only had a key. In June, 1889, a meeting of the trustees was held, at which defendant and Howland were present. It was, " *Resolved*, That the treasurer of this company be directed to call the loan made to A. C. Nellis, and solicit cash offers for the hypothecated stock and to report to the next meeting." Pursuant thereto the stock was sold at auction and brought about $520, which went into the treasury.

This action is brought to recover the money received by defendant on the ground that it was unlawfully converted. The learned justice dismissed the complaint on the ground that by foreclosing and selling the hypothecated stock the plaintiff had satisfied the loan and could not now claim that the transaction was illegal    The

defendant claims, as we understand, that if the plaintiff would recover against the defendant for the wrongful taking of its money, it must first surrender to him the security which he gave for the money thus wrongfully taken; that when one, under the pretense of borrowing, obtains by fraud money from another, and pledges security therefor, the lender cannot keep the security and enforce it and recover for the fraud.

We do not know whether the defendant would insist that if no security had been given, and if he had afterwards made a payment on his note, the reception of the money so paid would have prevented a recovery for the fraud. If a thief steals money, and afterwards returns a part, does the acceptance of that part prevent a suit for the conversion? There can be little doubt that this money was wrongfully taken. The statute forbids a loan to a stockholder. (Laws of 1848, § 14, chap. 40.) The fact that there is, by that section, a special liability of the officers to creditors does not take away the prohibition. And the facts of this case are sufficient to satisfy a jury that the transaction was a fraudulent conversion. Indeed, this was not denied on the nonsuit.

It is not disputed that the trustees who voted at the meeting of June, 1889, knew then of the original transaction, and knew that the stock was by defendant attached to his notes as collateral thereto; and the question is whether selling that stock estops the company from treating defendant's acts as a conversion. It is plain that a board of trustees cannot ratify an act which they could not lawfully do in the first instance. The statute says: "No loan of money shall be made by any such company to any stockholder therein." The principal object of that provision is to prevent a reducing of the capital under cover of loans to stockholders. It is intended for the protection of creditors. Now, if Howland, the treasurer, was forbidden to make these loans to defendant, so were the trustees. But that which they are, by the statute, forbidden to do they cannot ratify after it has been done. If any authority is needed for this, see *Peterson* v. *Mayor* (17 N. Y., 449); *Brady* v. *Mayor* (20 id., 312).

Whether, under the decision in *Billings* v. *Trask* (30 Hun, 315), this transaction with defendant was a loan, so that the officers would be liable to creditors, we need not inquire. In that case there was

plainly no loan.. But the defendant urges that the plaintiff by selling the stock has ratified the contract in spite of the statutory prohibition. He cites the familiar doctrine stated, with numerous authorities, in *Baird* v. *Mayor* (96 N. Y., 599, etc.) : " The law not only requires a disaffirmance of the contract at the earliest practical moment after the discovery of the cheat, but a return of all that has been received under it, and a restoration of the other party to the condition in which he stood before the contract was made. To retain any part of that which has been received under the contract is incompatible with its rescission." This doctrine was there applied to executory contracts for the sale of personal property ; and the question related to the rescission of the contract, not to a case where the transaction was the fraudulent obtaining of property from the plaintiff. The defendant here took plaintiff's money. Whether he took it lawfully or unlawfully, in either case it was his duty to repay it ; and it was right for him to secure that repayment whether he was a mere borrower or a fraudulent converter of plaintiff's property. Perhaps the obligation was even stronger in the latter case. Why, then, should not the plaintiff avail itself of these securities whatever was the nature of the transaction ? It is true, as held in *Terry* v. *Munger* (121 N. Y., 161), that where personal property has been converted, if the owner sues for the value on an implied contract to pay for the goods and recovers judgment, he treats the title as having passed to the defendants, and, therefore, he cannot in another action recover damages for the conversion. The taking of money is not entirely analogous with the taking of chattels. There was no specific money taken in this case, and no question could arise as to the title to specific property. Even if plaintiff had recovered on defendant's notes it could not be considered, as in the case referred to, " as having, in effect, sold this very property." That is to say, a recovery on the notes would not, in effect, be a sale of the money taken by defendant. It would be a decision that the money had been either borrowed or unlawfully taken. But whatever might be the effect of a judgment upon the notes, or even of a suit commenced thereon (*Conrow* v. *Little*, 115 N. Y., 387), neither exists in this case. The plaintiff has only enforced these securities in order to collect what the defendant ought to pay it ; what he ought to pay the plaintiff if he legally

borrowed the money, and what he ought to pay it if he unlawfully took it.

Let us suppose that defendant had taken an amount of cash in bills from the drawer of the company, and had left in place thereof certain securities, might not plaintiff have sold those securities and then sued defendant in tort to recover the balance? And might it not have done this if he had pinned his promissory note to such securities?

We see no injustice in the view we have taken. The defendant has had the plaintiff's money and ought to restore it. It seems to us that there was evidence on which it might be found that he took it unlawfully. The sale of his securities has in no way injured him, and has in no way affected his position towards the plaintiff. So far as the avails have gone his liability is reduced. His unlawful act, however, remains, and for it he should answer. The remedy which the plaintiff took in selling this stock is not inconsistent with the position that he unlawfully and fraudulently took its money. There is no election of a remedy inconsistent with this action, unless it be held that one who takes money unlawfully cannot give security for its return.

The judgment should be reversed, new trial granted, costs to abide event.

LANDON, J. :

I concur with the presiding justice. It might have been found as a fact that the defendant had for a short time the practical control of the corporation, and did then abuse his temporary power by converting its funds to his own use under the guise of a loan, colorably secured by inadequate collaterals. The corporation subsequently did try to mitigate its loss by selling these collaterals. But this was no ratification of the transaction. An individual, competent to contract, may be beguiled and cheated, and subsequently ratify the voidable contract he was thus induced to make. But in this case when the defendant took the money he did not beguile or deceive the corporation; he effaced its power and will and capacity to act for itself; he held its hands and despoiled its treasury. Such a transaction cannot be ratified since it never could have been originally authorized. After applying the proceeds of the collaterals the bal-

ance unsatisfied represents the damages sustained by the corporation from defendant's wrong, and, upon the case assumed, plaintiff ought to recover these damages.

MAYHAM, J. (dissenting):

If this action were prosecuted between individuals competent on both sides to contract the transactions upon which this action was brought would not amount to a conversion of these funds, and an action for conversion of the same would not be sustained, and a complaint sounding in tort would be properly dismissed. (*Allen* v. *Allen*, 52 Hun, 398.) In that case it was held that in a complaint sounding in tort the tortious act must be proved to entitle the plaintiff to recover, and that proof of a breach of contract was not sufficient to justify a recovery, and the complaint was dismissed by the trial judge, and that determination was sustained on appeal. But it is insisted that the transaction in this case was tortious from the beginning; that the plaintiff by its trustees had no power through its treasurer to make such contract as was made with the defendant, and that they were alike incapacitated from ratifying such a contract after it was made; and that the defendant is not, therefore, protected from the charge of a wrongful conversion by the contract, and by the giving of his note with the collaterals; and that the adoption of that act by the plaintiff, by receiving the interest paid and the payments on the principal, and finally by the foreclosure of the lien on the stock pledged as collateral to this advancement to the defendant, did not estop or preclude them from treating the contract as absolutely void, and as if it had never been made, and holding the defendant liable as for a wrongful taking and conversion of this money.

This contention is based on the provisions of section 14 of chapter 40 of the Laws of 1848, which provides as follows: "Nothing but money shall be considered as payment of any part of the capital stock, and no loan of money shall be made by any such company to any stockholder therein; and if any such loan shall be made to a stockholder, the officers who shall make it, or who shall assent thereto, shall be jointly and severally liable to the extent of such loan, and interest, for all the debts of the company contracted before the repayment of the sum so loaned."

While the statute prohibits the stockholders and officers of this company, which was organized under the provisions of the chapter above referred to, from loaning its funds, it does not, in express terms, declare that such loan shall be void, but it imposes upon a stockholder or officer, taking part in such unauthorized loan, a liability for all of the debts of the corporation contracted before such loan is paid. This is, in effect, a recognition of the validity of the loan, and imposing a penalty for the illegal act upon the officers or stockholders making such loan. The act itself furnishes a remedy for its violation by giving to the creditors a claim against the trustees and officers who loan the money in violation of its provisions.

If the statute made the transaction void, then there could be no loan in fact or in law; and that part of section 14, which provides a remedy in case of a loan in violation of its provision, would, in all cases, be wholly inoperative, because in no case could there be a loan to a stockholder, as the void act would not be a loan. In *Billings, Receiver,* v. *Trask and Robinson* (30 Hun, 317) it was held that the provisions of this section applied only to cases where there was a loan in law, or in fact, in violation of its provisions, and the court says : " It is clear that, to establish a right of action under the statute, on behalf of creditors, it is necessary to show that the transaction, out of which it is claimed to have arisen, was, both in law and in fact, ' a loan of money ; ' and what is meant by those words, is an actual loan of money in such form as to create an indebtedness to be at some time repaid, so that a liability for payment by the borrower is created."

This reasoning of the court clearly establishes the legal proposition, that a binding contract can be made between the company and the stockholder to whom a loan was made ; and if such a contract can be made, then the borrower in this case got the money under a contract, and his possession of it was not a conversion, and an action cannot be maintained against him for a wrongful conversion. It is quite true that this manner of loaning the plaintiff's money is condemned by the statute, and the parties who participated in it are subject to the liabilities imposed by the statute, and become personally liable to the creditors ;. but there seems to be no authority for holding that the contract for the loan was so far void, as to the plaintiff, that an action for the conversion of these funds may be

maintained by it on the grounds that the loan conferred no title in the borrower, and at the same time valid as a loan of money for the purpose of making the parties personally liable for all debts of the company contracted before the repayment of the money loaned.

But it is insisted by the defendant that the plaintiff, by its present board of trustees, ratified this act of its treasurer and the defendant, by accepting the stock hypothecated as security, and foreclosing its lien upon the same, and retaining and appropriating to its own use the proceeds thereof. To this proposition the plaintiff makes answer that the trustees of a corporation can no more ratify an illegal act of its officers than it can perform the original illegal act. The contention of both parties upon this subject may, under certain conditions, be sound in the abstract, but not when applied to the same state of facts. We have seen that the loan to a stockholder did not render the act absolutely void. It being in violation of law, it might have been voidable if the company had moved promptly and tendered back the collaterals and notes, and demanded the return of the money, but as no such course was pursued, it is not necessary to determine that question here; but the plaintiff elected to retain the notes and collaterals and realize on the securities held as collaterals, after full knowledge of the illegal acts of the defendant and the treasurer of the plaintiff in making this loan; and we think that by that acquiescence, coupled with the benefits which they received and retained under this contract, they are estopped from now claiming that the contract was void *ab initio*, and from recovering against the defendant in an action for the wrongful conversion of the money loaned. Herman, in his Law of Estoppel, lays down the rule that corporations, as well as individuals, may be estopped by their acts.

" A corporation may become bound and estopped otherwise than under a corporate seal, and their undertakings and admissions may be evidenced otherwise than by records, resolutions, by-laws, ordinances or other written documents. Technical, as well as equitable, estoppels apply to corporations as well as to individuals. The ratification of a contract by a corporation may be inferred from facts attending the transaction; and where persons, assuming to act as agents of a corporation, but without legal authority, make a contract, and the corporation receive the benefits of it, and use the property acquired under it, such acts will ratify the contract and render

the corporation liable thereon." (Herman's Law of Estoppel, [1st ed.], § 555, p. 522; [2d ed.], vol. 2, p. 1367, § 1223.)

It is true that where the illegal act complained of affects third persons not parties to the act, and who are injuriously affected thereby, a subsequent ratification of the parties to the original illegal act will not bind such third persons so injured. (*Brady* v. *The Mayor of N. Y.*, 20 N. Y., 319.) But this case does not, we think, go to the extent of holding that a private corporation cannot, by adopting and appropriating to its own use the fruits of an illegal contract, with full knowledge of the facts, treat the contract as valid for the purpose of retaining the benefits to be derived from it, and at the same time repudiate it as to the other contracting party so as to hold him responsible for the wrongful conversion of the property received by him under the contract, which the other contracting party seeks to affirm as to itself, and repudiate as to him. I have found no case where the directors or trustees of a private corporation have been permitted to affirm an illegal contract so as to retain the benefits of it to the corporation, and at the same time repudiate it as to the other contracting party, and hold him liable for the conversion of the property received by him under it. If we would hold this transaction to be a contract between the plaintiff and defendant, the rule is elementary that even if it may have been fraudulent it cannot be rescinded, and the consideration recovered back by the party defrauded, until the party seeking to rescind restores, or offers to restore, all he received under it. In *Cobb* v. *Hatfield* (46 N. Y., 533, 537) the rule is very distinctly laid down that to retain any part of what has been received upon a contract isin compatible with its rescission; and to the same effect is *Masson* v. *Bovet* (1 Denio, 69). And in *Gould* v. *Cayuga County Bank* (86 N. Y., 75, 79) the court held: " One who seeks to rescind a compromise of a disputed claim on the ground of fraud must promptly, on the discovery of the fraud, restore, or offer to restore, to the other party whatever he has received by virtue of it, if of any value, in full; the tender must be without qualifications or conditions." Within these cases we think the plaintiff has not put itself in a position to treat this transaction as void from the beginning, and hold the defendant as guilty of a conversion of these funds.

We are referred by the plaintiff to *Thomson* v. *Sanders* (118 N. Y., 252) as an authority that restoration was not necessary to entitle a plaintiff to recover. But that was an action for damages. for fraud, and not an action for a wrongful conversion, and, as we think, stands upon a different principle.

On the whole case I think the learned trial judge was right in holding that this action, in the form in which it was prosecuted, cannot, under the facts proved, on this trial, be maintained. and that the nonsuit was properly granted.

Judgment reversed, new trial granted, costs to abide event.