## SEVENTEENTH WARD BANK v. SMITH.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. BANKS—ILLEGAL LOAN BY PRESIDENT.

The making of a loan of bank funds by its president in an amount exceeding one-fifth of its combined surplus and paid-up capital, without taking collateral of a value 10 per cent. greater than the sum loaned, while Laws 1893, c. 696, prohibiting a bank from making such loans was in force, was illegal, and the bank may recover the amount lost by such a loan from the president.

2. SAME—RATIFICATION BY DIRECTORS.

Where the president of a bank makes a loan of its funds which is illegal as not secured by sufficient collaterals, he is not relieved from liability from the loss resulting therefrom by the ratification of the loan by the directors.

3. SAME—PARTIES.

A bank is a proper party to bring an action against its president for damages resulting from his making an illegal loan of its funds.

4. SAME—EVIDENCE.

Where, in an action by a bank against its president to recover damages resulting from his making a loan of bank funds without the collateral required by law, the negligence of the president in making the loan was in issue, it was error to refuse to admit testimony showing the standing of the securities taken.

Appeal from trial term, Kings county.

Action by the Seventeenth Ward Bank against Thomas C. Smith for losses resulting from an illegal loan. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, the defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

John L. Hill, for appellant.

Charles E. Hughes (Arthur C. Rounds, on the brief), for respondent.

WOODWARD, J. This action, brought to recover the loss sustained by the plaintiff through an alleged breach of duty on the part of the defendant, has been fully tried and elaborately argued upon the appeal to this court, and we have reached the conclusion that the judgment appealed from should be reversed. The defendant was the president and a member of the board of directors of the plaintiff corporation. The plaintiff had a capital of $100,000, with a surplus of $50,000. At the time of the transactions complained of, the banking law of the state, in so far as it relates to this action, was contained in chapter 696 of the Laws of 1893, which provided that:

"No corporation or banker to which this chapter is applicable shall make any loan or discount to any person, company, corporation or firm or upon paper

upon which any'such person, company or corporation or firm may be liable to an amount exceeding the one-fifth part of its capital stock actually paid in and surplus; but this restriction shall not apply to loans or discounts secured by collateral security worth ten per centum more than the amount or amounts loaned thereon," etc.

On the 13th day of September, 1893, Mr. Smith, the defendant, loaned to Coffin & Stanton, of New York, rated as bankers, $40,000, taking two notes of $15,000 each, and two notes for $5,000 each, for different terms, or on short calls. This loan was made by the defendant personally on a check drawn by himself as president, and without consultation with any officer or director of the bank. The check was for $40,000, which was $10,000 in excess of the sum which the bank had a right to loan under the law without taking collaterals worth at least 10 per cent. more than the loan. The two $15,000 notes were left outstanding, or were renewed from time to time, until the 30th of July, 1894, when they were renewed, one by demand notes, the other for 60 days, while the two $5,000 notes were paid. Subsequent to the making of this $40,000 loan, and while at least $30,000 of the original loan was outstanding, other sums were loaned to Coffin & Stanton by the defendant, so that the average of loans outstanding could not have been less than $40,000 substantially all of the time down to July 30, 1894, at which time all of the outstanding notes, aggregating $40,000, were renewed by the defendant. Subsequently Coffin & Stanton failed, and the collaterals which had been deposited with the defendant at the time of making the original loan, and which were kept in the president's safe, were sold, bringing in to the bank the sum of $6,299. Some portion of the renewed notes had been paid, so that at the time of the sale of the collaterals the indebtedness aggregated $37,953, which, less the sum received for the collaterals, makes the claim of the plaintiff $31,654. The action was brought upon the theory of negligence on the part of the defendant in not using proper care in determining the worth of the securities, and the question of the value of the collaterals was fully developed on the trial, and submitted to the jury upon a charge which was as favorable to the defendant as he had any right to expect under the law. From the judgment entered appeal comes to this court.

There does not seem to be any question of ultra vires involved in this action. It was clearly within the legal capacity of the defendant, as the general manager of the affairs of the bank under the provisions of its by-laws, to loan the funds of the bank in excess of one-fifth of its capital and surplus, provided he took collateral worth at least 10 per cent. more than the amount of the loan; and the question presented is thus one of fact: Did the collaterals which he took on the occasion of this loan meet the requirement of the law? Were they worth at least 10 per cent. more than the amount of the loan? Or, as the question was submitted to the jury, did the defendant exercise reasonable care and diligence in determining the value of the securities? Did he have a right to suppose that the collateral was worth the amount prescribed by the statute? The defendant in this case was the agent of the corporation, upon whom duties devolved of management and of care, and for a failure in the performance of

890    64 NEW YORK SUPPLEMENT   (Sup. Ct.

and 98 New York State Reporter

these duties he will be held liable at law for the damages which the corporation may be shown to have suffered. Dykman v. Keeney, 154 N. Y. 483, 491, 48 N. E. 894. It seems clear that, the statute having prescribed the rule of conduct for the officers of banking institutions, the board of trustees could not ratify the acts of this defendant in such a manner as to deprive the plaintiff of a right of action to recover for a neglect of duty. "It is plain," say the court in Nellis Co. v. Nellis, 62 Hun, 63, 16 N. Y. Supp. 545, "that a board of trustees cannot ratify an act which they could not lawfully do in the first instance. The statute says, 'No loan of money shall be made by any such company to any stockholder therein.' The principal object of that provision is to prevent a reducing of the capital under cover of loans to stockholders. It is intended for the protection of creditors. Now, if Howland, the treasurer, was forbidden to make these loans to defendant, so were the trustees. But that which they are, by the statute, forbidden to do, they cannot ratify after it has been done. If any authority is needed for this, see Peterson v. Mayor, 17 N. Y. 449; Brady v. Mayor, 20 N. Y. 312." If the board of trustees or directors could not ratify the acts of the defendant, neither could they adopt his acts, nor could their judgment as to the worth of the securities become conclusive as against the plaintiff in this action. The one question, clearly stated to the jury, was whether the securities were, in fact, worth 10 per cent. more than the loan, or had the defendant a right to assume that they were worth that amount from the inquiries which he had made? The learned trial court charged the jury upon this point as follows:

"Now, decide that one question first, and, if you decide that the securities were not worth ten per cent. more than the amount of this loan, then you go further, and you apply to that fact this measure of the duty on the part of the plaintiff [defendant] of fidelity, conscience, and ordinary skill and care in his business, and inquire whether he knew that that was the case as to their value, or whether, by the exercise of ordinary care and attention, he would or should have known that that was the case, because, under the law, that is the same thing."

The board of directors had made no inquiry in so far as the evidence goes. They had taken no part in making the loans. The acts complained of were the acts of the defendant in making the loans in excess of the statutory rule without securing proper collateral, and the bank could not be estopped to hold the defendant liable for a neglect of that statutory duty. There is clearly no legal presumption that the board of directors constitutes all of the stockholders of a banking corporation, and it is the duty of the bank, in its corporate capacity, to protect those who may be interested, either as stockholders or creditors, against the negligence or unlawful conduct of its officers. The case of Holmes v. Willard, 125 N. Y. 75, 25 N. E. 1083, 11 L. R. A. 170, does not assert a contrary doctrine, nor is the reasoning in that case inconsistent with the conclusion which we have reached in the case at bar. In the Holmes Case, supra, the corporation was organized for the purpose of manufacturing and dealing in brass and other metallic products. It subsequently entered into a contract with an Ohio company to handle the carbons produced by that corporation, and in the course

of business the treasurer and general manager of the metal-working company discounted a note to aid the Ohio company in producing a larger quantity of carbons, for which there was an active demand. The transaction resulted in a loss to the company, but the court held that under the facts in that case the business of dealing in carbons, while ultra vires of the plaintiff, had in fact become the business of the plaintiff, and that the corporation "engaged in an ultra vires business cannot sue, for damages suffered therein, the agent it employs to carry on the business." In the case at bar the business conducted was not ultra vires. It was within the powers of the corporation, subject only to the rule that collateral must be exacted where the loans exceed a certain portion of the capital and surplus; and, if the defendant did not act within the law, he became liable to the plaintiff for the damage actually sustained by reason of his negligence.

The appellant urges that the sole right of action for the wrongs here alleged, if they are wrongs, is in the nonconsenting stockholders, if any, or in the state; but we are of the opinion that the defendant is mistaken upon this point. In such actions as these the defendants are not proceeded against strictly as trustees, but as agents acting for a principal; and for any damage caused by their neglect and violation of duty the remedy at law is adequate. Dykman v. Keeney, 154 N. Y. 483, 491, 48 N. E. 894. The difficulty in sustaining the judgment is not found, therefore, in the law applicable to the questions at issue, but in the rulings of the court upon objections taken to the exclusion of evidence upon the trial. Accepting the law as laid down in the charge of the learned court, quoted above, that the defendant was bound to use ordinary skill and care in the conduct of the business of the bank, it was competent for him to show that others engaged in the banking business, and who are presumed to know the value of securities, had been receiving the same collaterals as security for loans from this firm of Coffin & Stanton. Mr. Talcott, a director in the Manhattan Company, was asked: "Did you, Mr. Talcott, make any loan to Coffin & Stanton, secured by collateral security, any part of which collateral consisted of the first mortgage bonds of the New York City Suburban Water Company?" To this there was a general objection, sustained by the court, the defendant excepting. The court then added, "This ruling must suffice for all the witnesses on this point," and no further witnesses were called in support of this proposition. The bonds of the New York City Suburban Water Company were among those included in the collaterals accepted by the defendant, and it seems clear to us that under the rule laid down by the court in its charge to the jury it was proper that the defendant should be permitted to show that these securities had a standing in the commercial world which was recognized, the common knowledge of which, it might be inferred, was shared by the defendant. If other financial institutions were receiving and accepting these securities as collateral, and this fact was generally known to the business community of which the defendant was a part, it would be some evidence of the degree of care and prudence

exercised in the transaction of the business of the bank, and it should not have been withheld from the jury by a general ruling which closed the door to this line of evidence. The same tendency is manifest in the ruling as to the testimony of Mr. Baker, president of the Manhattan Company, and to that of Mr. Coffin, a member of the firm of Coffin & Stanton. While there may be a question as to the admissibility of evidence of Mr. Coffin as to loans made upon the "same class of collateral as those embraced in the list," the question asked of Mr. Baker does not appear to have been objectionable, and the exception of the defendant brings up the ruling for review.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.