CITY OF DETROIT v. EUGENE ROBINSON AND JESSE H. FARWELL.

*Construction of a Paving Contract—Contracts ultra vires.*

Where an offer was made to lay paving specified in an official advertisement, and a contract resulted authorizing the municipality to withhold enough to pay a certain royalty upon the pavement used, the advertisement, contract and previous correspondence showing what the parties understood the amount to be withheld would be, were held admissible in an action on the contract.

The charter of Detroit requires that proposals for public work shall be advertised for, and the contract let to the lowest bidder. *Held* that if the construction of the contract were questioned, the advertisement and bid would be admissible in evidence.

Where a city charter forbids the execution of public works except under contract with the lowest bidder, there can be no recovery as upon an implied contract for work done for the city's benefit but not actually contracted for.

A promise will not be implied as against a municipal corporation where it can not contract expressly.

Error to the Superior Court of Detroit. Submitted October 8, 1877. Decided January 15, 1878.

ASSUMPSIT. The facts are in the opinion.

*Wm. C. Maybury, D. C. Holbrook, Alfred Russell* and *C. I. Walker* for plaintiff in error.

*Griffin & Dickinson* for defendants in error.

MARSTON, J. Robinson and Farwell brought an action of assumpsit against the city of Detroit to recover a balance which they claimed was due and owing them on account of materials furnished and work and labor done in paving a portion of Woodward avenue in said city.

It appeared from the testimony of Farwell, one of the plaintiffs, and was not disputed, that the materials were furnished and work and labor performed under a contract made between the city and Robinson in 1875 and afterwards assigned to a copartnership composed of plaintiffs. It farther appeared that the entire work and labor done and materials furnished under the contract amounted to the sum of $5,931.28; that all of this had been paid except the sum of $833.69, which had been withheld and was then in the city treasury.

On the part of the defendant it was claimed that the plaintiffs, claiming to be licensees of Phillips and Stowe patent pavements, had sold the city the right to use the same during the year 1875 at sixteen cents per square yard for so much of the same or either as might be laid; that in accordance with the terms of the contract under which this work was done, the city was authorized to, and did retain sixteen cents per square yard to pay all royalty due on account of laying the pavement under the contract. The defendant farther claimed that the patent under which this pavement was laid was void for want of novelty; that the plaintiffs had previously sued the city to recover a large amount claimed to be due them for royalty, and that the amount claimed in this case was also included in that, and that the claim in this case had been presented to the council as a claim for royalty. The defendant farther claimed and offered to show that Stowe, the patentee, had served a notice upon the city, not to pay royalty to the plaintiffs, but to himself.

In rebuttal the plaintiffs offered in evidence the Phillips patent, a license to them from Phillips to lay this pavement and an abstract of title to the same which

was admitted, and plaintiff Farwell then testified that the pavement laid, upon which this balance was claimed to be due, was laid under the Phillips patent, and this balance the plaintiffs claimed not as a royalty, but as due under their paving contract.

Counsel for defendant requested the court to charge the jury, in substance, that June 29th, 1875, plaintiffs and defendant made a written contract for paving a certain part of Woodward avenue; that the work was done, accepted by the board of public works, and the amount due ordered paid by the council; that the contract amount was assessed, collected and paid over except $833; that this amount was retained under the contract; that the question to be determined is whether plaintiffs are entitled to recover this sum, which depends upon the construction to be placed upon the contract by the court; that by the contract plaintiffs agreed, *first,* to pay all royalty on the pavement called for by the contract and specifications attached to it, describing the "Stowe cedar block and sand foundation pavement;" *second,* to protect the city against all claims for any patent used in the construction of said pavement, viz.: the pavement specified in the specifications; *third,* that in order to insure the protection of the city, it had a right to retain this money, until some one should establish a title to it as royalty; that in order to properly construe this clause in the contract, the written bid of plaintiffs and the printed advertisement of the city referred to therein, must be construed in connection therewith; that the advertisement cannot be clearly understood without reference, 1st, to the invitation of the city addressed to plaintiffs in March, suggesting that they file a proposition for use of the patent: 2d, to their proposition afterwards put in on April 5th, transmitting only the Stowe patent: 3d, to the acceptance of that proposition by the board of public works April 23d: 4th, to the advertisement of June 17th requiring bidders: and 5th, the bid itself; that all these writings being *in pari ma-*

*teria* are to be construed together; that under them the pavement contracted for was the Stowe pavement, and that the ninety-four cents expressed in the contract included the sixteen cents royalty on the Stowe patent, and that it was not competent under this contract to show that the pavement was laid under the Phillips patent; that in order for plaintiffs to recover they must make out a title to the sum retained as owners of a royalty, and not as contractors, and that the pavement laid was covered by the Stowe patent, and that they had introduced no evidence to show that the pavement was covered by the Stowe patent. The court refused each and all of these requests, and charged that it made no difference whether the patent existed or not upon the pavement in this case, whether or not the Phillips or the Stowe or any other of them were actually laid.

This statement is somewhat lengthy, but it presents pretty clearly the questions which counsel desired to have the court pass upon. In the light of what has been already stated, we will now, and before attempting to pass upon any of the legal questions raised, give as brief and condensed an abstract of the contract and writings already referred to as can consistently be done, in their regular chronological order.

On the 5th day of March, 1875, a communication was sent by the board of public works to Eugene Robinson, notifying him that no bids for patent wood pavement would be received unless thrown open to competition, and that in order to prevent any misunderstanding thereafter, he was requested to file with the board a copy of any patent he was interested in or controlled; also to file a proposition showing what royalty contractors would have to pay.

April 5th, 1875, Robinson and Farwell sent a communication to the board of public works offering the use of the Phillips round block pavement and the Stowe cedar pavement for the season of 1875 for the sum of sixteen

cents per square yard, and enclosed therewith the Stowe patent and their authority to lay the same.

The board of public works accepted so much of this communication as refers to the use of the Stowe patent.

June 17th the board advertised for sealed proposals "for furnishing all the labor and materials and regrading and repaving Woodward avenue    *    *    with wood pavement according to the specifications adopted by the common council and the estimates of the city engineer." The advertisement, among other provisions, contained a clause that "bidders for patent wood pavement must include in their proposals the amount of royalty which the city has contracted to pay the owners of the patent."

In reply to this Eugene Robinson addressed a communication to the board offering to execute and perform the work specified in the advertisement and the specifications adopted by the common council at prices therein stated: "For furnishing and laying square yards of Stowe wood paving, including ballast and top dressing, 95 cents per square yard; Phillips cedar block, 98 cents; Wycoff cedar block, 90 cents." The same proposition seems to have been repeated for paving generally in the city, the only difference being 94 instead of 95 cents for Stowe pavement.

The specifications referred to in this advertisement and offer were headed "specifications for Stowe cedar foundation pavement," and the specifications in fact describe the Stowe pavement, and are inconsistent with the Phillips patent.

June 29th a written contract was entered into by and between the city by the board of public works and Eugene Robinson. In this contract Robinson agreed to furnish at his own proper cost the materials and regrade and repave Woodward avenue "with Stowe cedar block and sand foundation pavement in conformity to the specifications and estimates hereto [thereto] attached and made a part of this contract." This contract also contained the following provision:

"And it is further mutually understood that the party of the second part shall, and the party of the second part especially agrees that he will pay all royalty or money necessary to be paid or to become due on account of putting down the pavement required by this contract and said specifications, and protect the city against all claims for damages of every kind and nature on account of the use by the party of the second part of any patent or infringement of any patent in the construction of said pavement. And to secure this end the controller shall retain out of the first instalment of money to be paid said contractor a sum fully sufficient to pay all royalty due on account of the laying down of said pavement."

This was the only written contract ever entered into between the parties in reference to this particular work, and is the contract under and in accordance with which plaintiffs claim the balance in dispute. Under this contract plaintiffs were to receive "ninety-four cents for each and every square yard of pavement, superficial measure, including ballasting of bank gravel."

As between the parties, these papers all relate to the very subject matter in issue; they are all parts and parcel of the same transaction. The specifications and estimates are expressly made a part of the contract, and as to them there can be no question. The board of public works had advertised for proposals to do this work and a written proposition had been made by Robinson in answer thereto offering to do the work specified in the advertisement, and this contract resulted therefrom. This contract authorized the city to retain out of the contract price sufficient to pay all royalty, and the correspondence which previously took place between Robinson and Farwell and the board of public works showed at least what the parties understood this amount would be. Under the circumstances we think all these writings belong together, and that they should be resorted to for the purpose of settling, or assisting in so doing, any question arising and growing out of the uncertainties or ambiguities of the contract of June 29th.

There is another reason why the advertisement of the

38 MICH.—15.

board of public works, and the offer of plaintiffs to do the work in accordance therewith, should be received in connection with this contract. The provisions of the charter of the city of Detroit, as we shall hereafter refer to more fully, require that proposals for such work shall be advertised for and the contract let to the lowest bidder. If any doubt therefore could arise as to the terms and construction of this contract it would be proper to resort to the advertisement and bid, as they must be considered, within certain limits, as the authority of the board to enter into any contract at all. This provision of the charter, to be of any force whatever, cannot be construed as giving authority to advertise for proposals for a public work of one kind and afterwards entering into a contract materially different therefrom. This in effect would be to authorize the board of public works to enter into private contracts with *individuals* for the paving of the streets of the city,—something which we understand the board have no authority to do. *Detroit v. Michigan Paving Co.*, 36 Mich., 335.

When we come to examine this contract in the light of the previous writings, this case may be disposed of according to simple and well established elementary rules.

That this contract required the plaintiffs to lay the Stowe pavement, there can, it seems to me, be no possible doubt.

The advertisement called for proposals to re-pave the street with wood pavement according to the specifications adopted. The bid of plaintiffs offered to do the work at a certain price in accordance with those specifications. When we turn to those specifications, we not only find them headed "Specifications for Stowe cedar foundation pavement," but a comparison of the specifications with the description or manner of laying the Stowe pavement as contained in the patent shows that it was the Stowe pavement that was to be laid. Farther than this, turning to the contract, it provides for

repaving " Woodward avenue 80 feet wide from the south curb line of Jefferson avenue to a point 200 feet south of Atwater street, with *Stowe cedar block and sand foundation pavement*," according to the specifications, etc.

This, then, was what the plaintiffs had contracted to do. This contract was contrary neither to public policy, nor to any written or unwritten law of this State. It was one the city had made in accordance with the provisions of its charter, so that the contracting parties on both sides were legally competent to and did enter into this, —a valid binding agreement. Under such circumstances I know of no good reason, nor can I conceive of any, and certainly none is suggested in the record, why these parties should not be bound by the contract they have entered into.

It is conceded, and was on the trial in the court below,—and it was upon this theory they recovered,—that the pavement actually laid was not the Stowe, but the Phillips pavement. This is a practical concession by plaintiffs that they did not perform the contract on their part. An examination of the letters patent will show that the Stowe and Phillips pavements are not laid in the same manner. The Phillips pavement may be a better one for aught we know, but it is not a question of comparisons. Neither the plaintiffs, nor the board of public works, nor both combined, without a reletting, would have had any authority to substitute some other kind of pavement for the one contracted for, whether such substituted pavement should in fact be better or not. To give the board and contractors such a power, would render nugatory the express provisions of the charter.

The plaintiffs, therefore, not having performed the contract on their part, cannot recover upon that contract. They cannot sue for and recover the contract price for laying a Stowe pavement and at the same time admit that they laid no such pavement at all, but something else the contract did not call for. This seems to

me too plain and elementary to require the citation of authorities or to admit of any question.

If then the plaintiffs.have not performed the contract on their part so as to be able to recover upon the express contract, can they upon an implied contract for materials furnished and work and labor performed for, ,and accepted by, the defendant?˙ This is the only other ground upon which they can found their action. It seems to me they cannot recover upon a *quantum meruit* for such materials, work and labor, and that the case of *Detroit v. The Michigan Paving Company*, already referred to, is decisive of this question.

It was there held that the provisions in the Detroit city charter, § 207, and sec. 30,˙3 Sess. L., 1871, p. 284, of an act to establish a Board of Public Works, which forbids the execution of public works except under contract with the lowest bidder, was intended to prevent private contracts for such work; that where such a provision is contained in the charter the city cannot be held liable for work done for their benefit as upon an implied contract, for the law will not imply a promise as, against the city, where it could not make an express contract.

If the city could be held liable in this case upon an implied contract, it might then become material to farther construe the express contract in this case as to the amount retained in accordance therewith. As the case now stands, we do not consider that or the other questions raised at all material, and. shall not, therefore, farther discuss them.

For the reasons given, I am of opinion the judgment should be reversed and a new trial ordered.

The other Justices concurred.