JAMES E. MACKEY v. THE TOWNSHIP OF COLUMBUS.

*Townships—Contract for building bridge—Failure of commissioner to require security—Public corporations*

1. A contract let by a highway commissioner for building a bridge at a cost of over $50, without security, as required by How. Stat. § 1414, is invalid.

2. Persons dealing with public corporations are bound to make their contracts according to law, and will not be protected unless they do so. *Detroit v. Paving Co.*, 36 Mich. 335; *Detroit v. Robinson*, 38 Id. 108; *Mackenzie v. Treasurer*, 39 Id. 554; *Niles Water Works v. City of Niles*, 59 Id. 311.

3. Contractors have ample means to protect themselves, and if a township can be held on an implied contract, or estopped by the acts of its officers, when there is no valid contract, it would enable those persons to disregard the law entirely, and collude with their friends to do indirectly what, if directly done, would be a plain illegality.

Error to St. Clair. (Stevens, J.) Argued June 14 and 15, 1888. Decided July 11, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Atkinson & Vance*, for appellant.

*Avery Bros.* and *Elliott G. Stevenson*, for plaintiff.

CAMPBELL, J. Plaintiff sued and was allowed to recover on a written contract for building a bridge over Belle

river, purporting to be made with Patrick Kelley, commissioner of highways. The contract included the abutments or piers, the trestle-work and approaches, and the material. This contract, which was dated and approved by the town board July 24, 1883, provided for the completion of the work by September 25, 1883, for $614. Any delay involved a forfeiture of $200, and made plaintiff liable for damages.

The place where this bridge was to be built was on a newly-projected highway, at a not great distance from the old highway and bridge to be superseded. It would seem that the new highway was not worked, and was probably meant only to be used in case of the completion of the new bridge.

When plaintiff got his work done, as he claimed, the town authorities refused to accept, and never did accept it. The bridge remained unused, and the access to it was not made available, until about midwinter, when the whole structure was swept out during a freshet.

It was claimed, and the evidence tended strongly to show, that the work was not done properly, and that both material and workmanship were bad.

In the view we take of the case these questions need not be considered. There was never any acceptance or use of the bridge, and plaintiff's rights, whatever they may have been, were under the alleged contract

It appears from the record that the highway commissioner was anxious to have a bridge at the new location, and that he wanted to bring its cost within what he supposed to be his power to expend, $1,000, out of which he had already laid out a considerable sum, leaving a margin of only about the sum fixed in this contract. He talked the whole matter over with Mackey, who was informed what he wished to do, and for how much, and Mackey was entrusted with the drawing of specifications. There-

upon bids were advertised for, and Mackey's was $135 lower than any other, and $235 lower than the highest. His bid was accepted by the commissioner, and the contract was let without security.

The law is positive that no such contract can be let without—

"Good and sufficient security for the performance of the work." How. Stat. § 1414.

There is no doubt that the specifications, fairly considered, entitled the town to a well-made work of good materials, and bidders generally must have bid on that basis. It is shown quite plainly that Mackey measured the quality of his work and materials by the low price at which he contracted, and we doubt whether, if the contract had been valid, any recovery could be had on the facts.

Since townships have been made liable for defective bridges, it would certainly be wrong for town officers to resort to cheap and poor work to avoid expense, and if a bridge cannot be had within the general power of the commissioner, it ought not to be built without procuring the necessary authority to raise money enough to build a safe one. We are not authorized to impute fraud in fact to any of these parties, but no more effective means to enable fraud to be practiced could be found than such as appear here. Mackey was given exceptional facilities. He knew just how much money there was to expend, and made his specifications and bid accordingly. He seems to have felt justified in measuring the quality of his material by the standard of his pay. The other bidders had no knowledge of these things, and bid on what appeared upon the face of the papers. Had this bridge been accepted, and the acceptance been followed by some accident due to bad materials, the consequences to the township would

have been unfortunate, and the lack of security would have involved direct loss.

We have had occasion several times to hold that all persons dealing with public corporations are bound to make their contracts according to law, and will not be protected unless they do so. This case illustrates the necessity of such a rule. The doctrine was applied under the statute applying to townships, in *Mackenzie v. Treasurer*, 39 Mich. 554. It had already been held, in *Detroit v. Paving Co.*, 36 Mich. 335, and in *Detroit v. Robinson*, 38 Mich. 108, that there could be no liability against a municipality upon contracts not made in conformity with the statutes. And in *Niles Water Works v. City of Niles*, 59 Mich. 311 (26 N. W. Rep. 525), the law was laid down strictly on the same principles. It is the only rule which can be relied on to prevent fraud and collusion. Contractors have ample means to protect themselves, and if a township can be held on implied contract, or estopped by the acts of its officers, when there is no valid contract, it would enable these persons to disregard the law entirely, and collude with their friends to do indirectly what, if directly done, would be a plain illegality.

As the rule has been uniformly settled in this State, we need not discuss it further. No better example to show its necessity could be found than appears in the record before us.

No cause of action was made out, and there is no theory which could sustain the action. The judgment must be reversed, with costs of both courts.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. LONG, J., did not sit.