MCCURDY v. COUNTY OF SHIAWASSEE.

1. COUNTIES — BOARDS OF SUPERVISORS — POWER TO BORROW MONEY—NOTES—LIABILITY.

Boards of supervisors have no power to borrow money necessary to defray the current expenses of their counties, but the same must be raised by taxation.

2. SAME—PROMISSORY NOTES—VALIDITY.

Promissory notes given by the treasurer of a county, pursuant to a resolution of the board of supervisors assuming to authorize him to borrow money to defray the current expenses of the county, are unauthorized by law, and no recovery can be had against the county upon them.

3. SAME—NOTES—ACTION —PLEADING — EXECUTION — DENIAL UNDER OATH.

Where notes upon which suit was brought against a county were void because their execution was unauthorized by law, the defendant was not obliged to deny their execution under oath in order to defeat recovery upon them. Per MCALVAY, J., GRANT, C. J., BLAIR and MOORE, JJ.

4. SAME—LIABILITY—MONEY RECEIVED—IMPLIED CONTRACT.

No recovery can be had against a county upon equitable grounds upon a count for money had and received unless the facts indicate that it would be inequitable to deny recovery and the case is one in which the general law, independent of express contract, imposes an obligation to do justice; nor will equitable reasons control against any well-settled rule of law, or against public policy. Per MCALVAY, J., GRANT, C. J., BLAIR and MOORE, JJ.

5. SAME—CONTRACTS—POWERS.

All persons dealing with counties are bound to ascertain the limits of their authority fixed by statute or organic law, and are chargeable with knowledge of such limits. Per MCALVAY, J., GRANT, C. J., BLAIR and MOORE, JJ.

6. SAME—LIABILITY—MONEY BORROWED.

No recovery can be had against a county upon equitable grounds on a count for money had and received for money borrowed by the board of supervisors without authority of law.

Error to Shiawassee; Wisner, J., presiding. Submitted June 16, 1908. (Docket No 59.) Decided November 30, 1908.

Assumpsit by John T. McCurdy against the county of Shiawassee on promissory notes. There was judgment for plaintiff, and defendant brings error. Reversed, and judgment entered for defendant.

*B. P. Hicks* (*T. E. Barkworth*, of counsel), for appellant.

*Lyon & Moinet*, for appellee.

McALVAY, J. Plaintiff, in an action of assumpsit on two certain promissory notes on all the common counts, brought suit in Shiawassee circuit court against defendant. The case was tried before the Honorable Charles H. Wisner, circuit judge, presiding, without a jury, the court finding the facts and conclusions of law in writing, as follows:

### "Finding of Facts.

"For more than 20 years last past it has been the habit and custom of Shiawassee county to borrow money from time to time, as in the case at bar, said moneys being received and used by the county in the payment of its ordinary expenses, and, previous to the date of the notes mentioned in the declaration herein, no question has ever been raised as to the validity of such loans. The moneys realized from such loans, with interest thereon, have been repaid by the county from time to time as the same matured. The proceedings of the board of supervisors were from time to time duly published, as the law requires. The plaintiff had knowledge of the facts aforesaid at the time he made the loan represented by the note herein mentioned, and he, as did also the county, acted in the utmost good faith in the transactions. Since the notes in the case at bar became due, the question of issuing bonds for the purpose of paying the floating indebtedness of Shiawassee county, including the amount involved in this case, has three times been submitted to the electors of said county, and on each of said occasions the proposi-

tion has been lost. At a regular meeting of the board of supervisors, held at the court-house of said Shiawassee county April 10, 1900, a quorum of said board being present, Supervisor Morrice offered the following resolution, and moved its adoption:

" ' Whereas it is believed that the occasion may arise whereby it may be necessary to borrow money to meet the ordinary expenses of this county, be it therefore resolved by the board of supervisors of Shiawassee county that the treasurer of said county be authorized to borrow from time to time as the treasury demands such sums as may be necessary not to exceed eleven thousand dollars.'

"Such motion was carried by a yea and nay vote; total—yeas 23, nays none. The board was then composed of 24 members. Acting under authority of the foregoing resolution, Richard F. Kay, then treasurer of Shiawassee county, and so acting on April 13, 1900, borrowed from John T. McCurdy the sum of $5,000 for the use of Shiawassee county, giving a note therefor, which was taken up by the treasurer (and cannot now be found), and a renewal note given January 15, 1901, which was as follows:

" '$5,000.00        CORUNNA, MICHIGAN, January 15, 1901.
" ' July 15, A. D. 1901, for value received, I promise to pay to John T. McCurdy or bearer, at his office in the city of Corunna, the sum of five thousand dollars together with interest thereon at the rate of six per cent. per annum.

[Signed]        " ' RICHARD F. KAY,<br>
" ' County Treasurer.'

[Seal of the Treasurer of Shiawassee county, Michigan.]

"Indorsed on the back:

" ' I request an extension of the within note for six months from date, July 15, 1901.

[Signed]        " ' R. F. KAY.

" ' I hereby extend said note six months.

[Signed]        " ' JOHN T. MCCURDY.

" ' Interest paid in full January 15, 1902.
" ' Interest paid to March 15, 1902.
" ' Interest paid to October 1, 1902.'

"Indorsed stamped upon the face:

" ' Paid December 15, 1902, treasurer's office, Shiawassee county.'

"This note was paid by renewal note as follows (which is one of the notes sued upon):

" '$5,000.00                    Corunna, Michigan, December 15, 1902.

" 'One year after date for value received I promise to pay John T. McCurdy or bearer at his office in the city of Corunna the sum of five thousand dollars together with interest thereon at the rate of six per cent. per annum from this date until paid. Authorized by the board of supervisors. This note is given as renewal of a note of like amount dated January 15, 1901.

[Signed]    " 'Richard F. Kay,<br>
" ' County Treasurer.'

[Seal of the Treasurer of Shiawassee County, Michigan.]

" The interest was paid upon this note by the treasurer to December 15, 1905, and indorsed upon the back thereof. In like manner as aforesaid, and on October 18, 1901, the said treasurer, and so acting, borrowed from said John T. McCurdy the further sum of $5,000 and gave a note therefor as follows:

" '$5,000.00                    Corunna, Michigan, October 18, 1901.

" 'March 1, 1902, for value received I promise to pay to John T. McCurdy or bearer at his office in the city of Corunna the sum of five thousand dollars together with interest thereon at the rate of six per centum per annum from date until paid. Authorized by the board of supervisors.

[Signed]    " ' R. F. Kay,<br>
" 'Shiawassee County Treasurer.'

" Indorsed on the back:

" 'Interest paid to March 1, 1902.
" 'Interest paid to May 1, 1902.
" 'Interest paid to October 1, 1902.'

" Stamped across the face:

" 'Paid December 15, 1902, treasurer's office, Shiawassee county.'

" The above note was paid by renewal note as follows (which is the second of the two notes herein sued upon):

" '$5,000.00                    Corunna, Michigan, December 15, 1902.

" 'One year after date for value received I promise to pay to John T. McCurdy or bearer at his office in the city of Corunna the sum of five thousand dollars together with interest thereon at the rate of six per cent. per annum from date until paid. Authorized by the board of supervisors. This note is given as renewal of a note of like amount dated October 18, 1901.

[Signed]    " 'Richard F. Kay,<br>
" ' County Treasurer.'

[Seal of the Treasurer of Shiawassee county, Michigan.]

"The interest was paid on this note by the treasurer to December 15, 1905, and indorsed thereon. The moneys borrowed from Mr. McCurdy, and for which the notes were given, were placed in the contingent fund of the county, and used to pay the ordinary running expenses of the county. October 17, 1901, the board of supervisors at a regular meeting, with a quorum present, duly passed the following resolution:

"'On motion of Supervisor Wert the county treasurer was authorized to borrow necessary funds not to exceed $10,000.'

"The payments of interest by the treasurer upon both the notes in the suit were by him reported to the board of supervisors, which reports were referred by the board to its regular committee on settlement with the county treasurer, by said committee returned to the board with the recommendation that such report be accepted and approved, and it was duly accepted and approved. The two loans, aggregating $10,000, were also in due course reported to the board by the treasurer, by the board referred to its regular committee on settlement with the county treasurer, and by said committee reported back to the board, with recommendation that such report be accepted and approved, and the same was so accepted and approved. Both Mr. McCurdy and the treasurer acted in good faith in the entire transaction, both understanding and believing that the same were perfectly legal and binding. Mr. McCurdy had no knowledge or notice whatsoever that the county of Shiawassee made any claim whatsoever that the statute of limitations had run, or was running, against any portion of his claim until he was notified by his attorney that such statute had been pleaded in this case. December 15, 1905, at the time of the last payments of interest on the two notes, plaintiff had such notes present with him at the office of the treasurer of Shiawassee county, and then asked the treasurer to pay the principal of the notes, which the treasurer refused to do, on the grounds that the county had no funds with which to pay the same, and also for the reason that he had been enjoined from paying the outstanding indebtedness of the county. On the trial of this cause the plaintiff produced the two notes in court, and surrendered them to the clerk, to be by him canceled, upon the rendition of judgment, either for plaintiff or for defendant. The plaintiff never appeared before the board of supervisors

and asked for allowance of his claim, and never sought to have them audited or provide for the payment of the same. The injunction restraining the treasurer from paying any of the outstanding indebtedness of the county was granted, and in a cause to which the plaintiff herein was not a party.

### "Opinion and Conclusions of Law.

"It is the defendant's first contention that the suit cannot be maintained against the county, for the reason that the claim was not presented for audit by the board of supervisors. This is not an unliquidated claim, but the amount thereof is fixed and determined by the action of the board of supervisors in authorizing the loan, in confirming and ratifying the action of the treasurer in making the loans, and the payment of interest thereon from time to time. There was nothing whatever for the board to pass upon. No question of discretion was open to the board, and it had repeatedly acknowledged, fixed, and determined the amount of the county's indebtedness to the plaintiff. The law does not require the performance of an idle ceremony where substantial rights are in no way affected. The county either owed the plaintiff the full amount of his claim, or it owed him nothing. The board had already determined that it owed the claim, and when the debt had matured, and demand was made and payment refused for any reason, plaintiff had a right to sue and have the question of the county's liability judicially determined. The right to bring an action in assumpsit declaring on the common counts by an individual against the county is sustained in *Weston* v. *County of Luce*, 102 Mich. 528, and cases cited. The writ of mandamus is not the proper remedy where an action of law will lie. *Board of Sup'rs of Bay County* v. *Board of Sup'rs of Arenac Co.*, 111 Mich. 105, and cases cited.

"While it is conceded that the county of Shiawassee received into its treasury $10,000 of the plaintiff's money and mingled it with its contingent funds, yet it is claimed that in no event can he recover, not having shown that the money was actually paid out for the legitimate expenses of the county. I think it a sufficient answer to this claim to suggest that the law presumes that all public officers are honest and act within and do their duty, under the law; and, the money having been shown to have reached the contingent fund of the county, the law

presumes that it was used for proper purposes, or is still on hand. If the defendant seeks to set up the defense (if such would in fact be a defense) that the money was improperly withdrawn, and the county had no benefit from it, the burden shifts to the defendant to show such fact. *Scott* v. *Detroit Young Men's Society,* 1 Doug. (Mich.) 119, 150; *Peck* v. *Cavell,* 16 Mich. 9; *Hall* v. *Kellogg,* 16 Mich. 135; *Downing* v. *Rugar,* 21 Wend. (N. Y.) 178, 184.

" Our Supreme Court have held:

" 'A board of supervisors has no power, under 1 How. Stat. § 483, subds. 7, 10, to borrow the money necessary to defray the current expenses and charges of the county, but the same must be raised by taxation.' *Board of Sup'rs of Dickinson Co.* v. *Warren,* 98 Mich. 144.

"Plaintiff's counsel contend that the Supreme Court's attention was not called to sections 2441 or 2484, subd. 16, 1 Comp. Laws; and that, had the court considered these sections and section 2493 (as to the use of the word 'raise'), they would have necessarily reached a different conclusion. While the case above cited was a mandamus proceeding brought to compel the chairman of the board of supervisors to execute bonds to consummate a loan for the purpose of raising money for current expenses, and was not such a case as that at bar, where a party's money has actually been appropriated to the use of the county, both parties acting in good faith, yet the case covers the broad ground above stated, and I am not prepared to say that a consideration of the sections mentioned would have necessarily caused it to reach a different conclusion. I am therefore constrained to hold that, in so far as plaintiff's right to recover rests upon a special contract (the two notes), such contracts are void, and no recovery can be had upon them.

"May recovery be had under the count for money had and received by the defendant for use of the plaintiff?

" 'An action for money had and received is an equitable action, and can be maintained in all cases for money which, in equity and good conscience, belongs to the plaintiff. It has been much extended in modern times, and is founded solely upon the equitable rights of the parties.' *Beardslee* v. *Horton,* 3 Mich. 560.

"See, also, *Moore* v. *Mandlebaum,* 8 Mich. 434; *Atkin-*

*son* v. *Scott*, 36 Mich. 18; *Walker* v. *Conant*, 65 Mich. 194.

" 'The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' *Marsh* v. *County of Fulton*, 10 Wall. (U. S.) 676, 684.

"The city of Port Huron, under the provisions of a statute authorizing it to do so, issued a bond to a railroad company, and took the railroad company's bond in exchange therefor. Suit was brought on the city's bond. Mr. Justice COOLEY, writing the opinion of the court, held the act unconstitutional and the bond void, but used this language:

" 'It is not claimed that the city has ever received from the railroad company any payment upon the bonds of the latter, either by way of principal or of interest. If it had, we should agree with counsel that it could not retain such payments and at the same time refuse to pay its own bonds.' *Thomas* v. *City of Port Huron*, 27 Mich. 320.

"It is claimed that the language quoted from the two cases above cited was not necessary to a decision of the respective cases, and it is therefore of no binding force as authority. But it comes from such eminent authority, has such a ring of common sense, and points to the attainment of such an equitable and just result, that I believe I will pay some attention to it. In many similar cases the highest courts of the States and Nation have held, in effect, that the money of the individual cannot be appropriated to the use of municipal corporations and the true owner thereof be without remedy merely because the original contract, under which the money was obtained, was made without authority of law. *City of Parkersburg* v. *Brown*, 106 U. S. 487; *Reed* v. *City of Plattsmouth*, 107 U. S. 568; *Paul* v. *City of Kenosha*, 22 Wis. 266, 271, 273; *Nelson* v. *Mayor, etc., of New York*, 63 N. Y. 535, 544, 545; *Louisiana* v. *Wood*, 102 U. S. 294; *Hitchcock* v. *City of Galveston*, 96 U. S. 341; *Chapman* v. *County of Douglas*, 107 U. S. 348; *Logan County Nat. Bank* v. *Townsend*, 139 U. S. 67; 2 Dillon on Municipal Corporations (4th Ed.) § 938, and cases cited. From the foregoing I reach the conclusion that the plaintiff is entitled to recovery upon the equitable count for money had and received. What is the measure of his

recovery? It is the claim of the defendant that in any event plaintiff can recover but the sum of $5,000; that the first loan of that amount is barred by the statute of limitations, and when the notes are held void the payments of interest cannot be held to keep the debt alive. The county by its board of supervisors and treasurer treated the notes as valid, subsisting claims against the county, paid interest thereon, reported to the people of Shiawassee county through the published reports of the board the entire situation from time to time, and did all that any debtor could do to assure his creditor that his investment was alive and safe. Can the county now say, 'Your day is past; we have lulled you into security and your money is now ours'? If such be the rule, I am very glad indeed that the tender-hearted fathers of the law decided to give a corporation no soul that might suffer in the days that are to come. In my judgment the case of *Bogart* v. *Township of Lamotte,* 79 Mich. 294, does not rule the proposition under all the facts in this case. I believe the defendant is estopped from interposing the defense of the statute of limitations, and that the claim was renewed, from time to time, as interest was paid or renewal notes given, and the statute did not begin to run finally until December 15, 1905. Plaintiff is entitled to recover the sum of $10,000, with interest at 5 per cent. from December 15, 1905, and judgment will be entered as of February 14, 1908, for the sum of $11,081.95, with costs to be taxed, the same to be collected as in case of judgment against counties."

To these findings of fact and conclusions of law defendant duly excepted, and assigns error thereon. Three general propositions are advanced and discussed on the part of the defendant in its brief and argument to show that the judgment appealed from is erroneous.

(1) The claim should have been presented to and acted upon by the board of supervisors.

(2) Defendant is not liable, either upon the notes or upon an implied contract.

(3) The statute of limitations bars one-half of the claim.

The important, and, we think, the determining, question is whether defendant is liable under the facts as found in the case. Plaintiff's case shows that the money was

loaned by plaintiff to defendant, under authority of a resolution of the board of supervisors, which appears in the finding of facts, the purpose being "to meet the ordinary expenses of the county," and that the proposition was not submitted to a vote to raise the same by taxation. In a case where a construction of the sections of the statute defining the powers of boards of supervisors was under consideration, this court held that a board of supervisors has no power to borrow money necessary to defray the current expenses and charges of the county, but the same must be raised by taxation. *Board of Sup'rs of Dickinson Co.* v. *Warren*, 98 Mich. 144. The statutory provisions considered are contained in section 2484, 1 Comp. Laws. It appearing that the notes were given without authority of law, the trial court correctly held that under this decision the notes were void, and no recovery could be had upon them. The evidence in the case was all introduced by plaintiff. The case as made discloses that the court was correct in holding the notes void, and there is therefore no force in plaintiff's contention before this court that a recovery may be had on the notes, for the reason defendant had not denied their execution under oath. *Freeman* v. *Ellison*, 37 Mich. 459. If liability attaches to the county in this case, it will be under the count for money had and received contained in plaintiff's declaration, and upon purely equitable grounds. The liability must be imposed by implication. This was the view taken by the learned circuit judge, and upon which he based his reasoning in rendering a judgment for plaintiff. Plaintiff cannot recover unless the facts indicate that it would be inequitable to deny recovery. The case must be one where the general law, independent of express contract, imposes an obligation to do justice. Nor will equitable reasons control against any well-settled rule of law, or against public policy. A county has no power to borrow money in the manner and for the purposes proposed in the case at bar, unless the same is granted by statute. No

power having been granted by statute, none will be implied. 11 Cyc. p. 502, and cases cited. All persons dealing with counties are bound to ascertain the limits of their authority fixed by statute or organic law, and are chargeable with knowledge of such limits. 11 Cyc. p. 468, and cases cited. This court has held that the doctrine of implied liability as upon implied contracts has no application to cases where the liability can only be created in a certain way. *McBrian* v. *City of Grand Rapids,* 56 Mich. 95, and cases cited and digested. The conscience of the court is appealed to in this equitable action, and it is argued that exact justice demands the return of money to plaintiff which the county has received. That the case is a hard one is apparent, but that hard cases make bad law has become a proverb with the courts. The proposition contended for should have, and does have, the hearty support of the courts, subject to certain limitations or restrictions heretofore stated.

The knowledge of plaintiff of the custom of 20 years, by the officers of this county, to enter into like transactions, is urged as showing good faith on his part, as a factor weighing in his favor in this action. The record shows that other cases like the one at bar are pending, and that in this irregular way large sums of money have been received by the county. The court below finds that this has been the custom for 20 years, and we hold that such transactions have all been without authority of law. That a custom of this nature has existed for 20 years does not appeal very strongly to the court as a reason for granting equitable relief. There is no proof in the record that the money in this case has been used by the county. The finding of fact to the effect that it had been used was based, as the court states, upon his presumption. We do not think such presumption was warranted. It was not supported by the proofs. As we view the case, however, we think the point not of material significance.

The intimation is strong from the pleadings that these loans were not made for the purposes set forth in the reso-

lutions.    What this court has said in a former case relative
to the dangers of holding municipalities liable in dealings
where the clear provisions of the law have been ignored
is well illustrated, in the case at bar, in the reckless con-
duct of the officers of the defendant.    The court said:

"We have had occasion several times to hold that all
persons dealing with public corporations are bound to
make their contracts according to law, and will not be
protected unless they do so.    This case illustrates the
necessity of such a rule.    The doctrine was applied, under
the statute applying to townships, in *Mackenzie* v. *Bar-
aga Township Treasurer*, 39 Mich. 554.    It had already
been held, in *City of Detroit* v. *Paving Co.*, 36 Mich.
335, and in *City of Detroit* v. *Robinson*, 38 Mich. 108,
that there could be no liability against a municipality
upon contracts not made in conformity with the statutes.
And in *Niles Waterworks* v. *Mayor, etc., of Niles*, 59
Mich. 311, the law was laid down strictly on the same
principles.    It is the only rule which can be relied on to
prevent fraud and collusion.    Contractors have ample
means to protect themselves; and, if a township can be
held on implied contract, or estopped by the acts of its
officers, when there is no valid contract, it would enable
these persons to disregard the law entirely, and collude
with their friends to do indirectly what, if directly done,
would be a plain illegality." *Mackey* v. *Township of
Columbus*, 71 Mich. 227.

In cases where equitable reasons are urged for the pur-
pose of placing liability upon a municipality, consideration
of the rights and interests of those most seriously inter-
ested must not be lost sight of.    The taxpayer is entitled
to the protection of all constitutional and statutory re-
strictions.    In the aggregate he is the public for whose
benefit the municipality exists, and which bears all the
burdens put upon it, but which is not consulted when
such burdens, as in this case, are assumed.

In the case at bar the record shows that three times the
electors have at special elections refused to vote to bond
the county to pay floating indebtedness, which includes
the amount in suit.    Whether this was done before or
after the notes in suit became due is immaterial.    In the

only constitutional way provided these electors have repudiated the illegal acts of the officers of the county. If this court should undertake to say that this indebtedness, admittedly illegal, must be paid by this county, it will practically declare the restrictions above mentioned to be inoperative, and subject the treasuries of all the municipalities of this State to the rapacity of designing and dishonest officials, leaving no protection whatever against recklessness, extravagance, crime, and bankruptcy. Such holding would be contrary to the spirit of previous decisions of this court, and against public policy. There is a line of authorities, Federal and State, including a Michigan case (*Thomas* v. *City of Port Huron*, 27 Mich. 320), which are relied upon by the trial court as warranting a recovery, which we think can be distinguished from the case at bar. The case of *Thomas* v. *City of Port Huron* does not decide the question in this case. What was said is admitted to be dictum. The question before us was not passed upon. The case was held to be controlled by *People* v. *Township Board of Salem*, 20 Mich. 452, and *People* v. *State Treasurer*, 23 Mich. 499. The court refused to apply the doctrine of implied liability, as also it did later in *Highway Commissioners of Sault Ste. Marie* v. *Van Dusan*, 40 Mich. 429. In all these cases, except *Thomas* v. *City of Port Huron*, the thing done had been, to a certain extent, authorized, or something had been sold, or property was exchanged by the municipality. In the case at bar an ordinary loan of money was made to the county. It was without any authority of law. Of the illegality of the transaction and the disability of defendant, the plaintiff is presumed to have had knowledge. There is nothing in the transaction which amounts to a conversion of property, or a holding out of something for sale of implied value, or any conduct amounting to actual or constructive fraud, deceit, or misrepresentation.

The facts in this case do not indicate that it would be inequitable to deny relief; nor is this a case where the

general law, independent of the special contracts, imposes an obligation to do justice, and it would clearly be against public policy to allow a recovery.   Our conclusion, therefore, is that the court was in error in holding, as a conclusion of law, defendant under the equitable count was liable for money had and received.   This conclusion is in harmony with former decisions of this court.   See *Bogart* v. *Township of Lamotte,* 79 Mich. 294; *Spitzer* v. *Village of Blanchard,* 82 Mich. 234; *Affeld* v. *City of Detroit,* 112 Mich. 560; *McBrian* v. *City of Grand Rapids,* supra; *Mackey* v. *Township of Columbus,* supra; *City of Detroit* v. *Paving Co.,* 36 Mich. 335; *City of Detroit* v. *Robinson,* 38 Mich. 108.

The first and third contentions of plaintiff need not be considered.

The judgment is reversed, and no new trial granted.

GRANT, C. J., and BLAIR and MOORE, JJ., concurred.

OSTRANDER, J. (*concurring*).   I do not find in the record any evidence of bad faith upon the part of the plaintiff, the board of supervisors, or the treasurer who issued to the plaintiff the notes of the county.   It is not an unusual thing for boards of supervisors to borrow money in anticipation of taxes, and to authorize the giving of notes of the county as evidence of the loans so made.   Usually such temporary loans are paid as fast as taxes are collected.   If it had appeared in the case of *Board of Sup'rs of Dickinson Co.* v. *Warren,* 98 Mich. 144, that, instead of being about to bond the county for a large sum, the supervisors had voted the necessary moneys, and proposed to borrow only until such time as the taxes could be received, I think a different question would have been presented than the one decided.   In any event, however, the decision of that case goes upon the ground, not merely that the county had no power given it to borrow money to pay current expenses, but that a proper construction of the statute indicated that the exercise of such power is prohibited.   In the case at bar it

does not appear that the loans were temporary or in anticipation merely of the collection of taxes already voted. The reasonable inference is rather that the loan was not merely temporary, but was such a one as this court held, in the case referred to, the supervisors had no power to make. Nor does it appear for what purposes the money was disbursed. I think, therefore, that the only debatable question presented is whether plaintiff may recover upon the count for moneys had and received—so much of his money as was received by the county treasurer within the period of the statute of limitations.

If we eliminate the theory of a recovery upon the original contracts, or upon a renewal or extension thereof, we must also eliminate the idea that the county has, by any acknowledgment of indebtedness, waived the provisions and operation of the statute of limitations. It is undisputed that as to one-half the sum claimed it was not received into the treasury of the county within six years before suit was begun. A careful examination of cases adjudicated by the Federal courts, and by the courts of this and other States, has convinced me, contrary to my first impressions, that plaintiff cannot be permitted to recover without setting aside rules as salutary as they are well established. Counties have no inherent general power to borrow money. They have no power to borrow money to pay current expenses. For such expenses they are remitted to the exercise of the power to tax. If, notwithstanding this want of power, money is borrowed to pay current expenses, it is of small consequence to deny the right of the lender to recover upon the express contract while raising an implied and enforceable duty on the part of the municipality to pay. The board of supervisors, having no authority to make the loan, have no authority to ratify the making of it, or to create a liability of the county by applying the money to the payment of expenses or to any other use. The people of the county have declined to ratify the transaction, in so far as a refusal to vote an issue of bonds for that purpose can be so consid-

ered.   The rules which should govern the decision of the
case are also well stated, with abundant references to
authority, in the opinions in *Agawam Nat. Bank* v. *In-
habitants of South Hadley*, 128 Mass. 503, in *Wells* v.
*Town of Salina*, 119 N. Y. 280 (7 L. R. A. 759), and in
*McDonald* v. *Mayor, etc., of New York*, 68 N. Y. 23.
See, also, *Bogart* v. *Township of Lamotte*, 79 Mich. 294.
In *Coit* v. *City of Grand Rapids*, 115 Mich. 493, a case
supposed to be favorable to the position of plaintiff, the
court uses this pertinent language:

"If we conceded the premises assumed by defendant,
viz., that the contract was wholly ultra vires, we might
be compelled to reach the conclusion that the city could
not be estopped to set up its invalidity."

A distinction is drawn in argument, and there are ad-
judicated cases which appear to recognize it, between an
obligation implied by law to do what the illegal contract
requires to be done and a duty to restore—give back—
whatever has been received in pursuance of the original
illegal contract; between the contract or an implied obli-
gation to perform and the legal obligation to refrain from
disaffirming the contract while keeping the benefit derived
from it.   There also are decided cases which are supposed
to go upon the idea that a want of power to do a particular
thing is to be distinguished from a prohibition of, or an
express denial of the right to, the exercise of the power.
The opinions in *Argenti* v. *City of San Francisco*, 16
Cal. 255; *Allen* v. *Intendant, etc., of La Fayette*, 89
Ala. 641 (9 L. R. A. 497), *Hitchcock* v. *City of Galves-
ton*, 96 U. S. 341, and many others, among them some of
our own decisions, contain statements which seem to sup-
port one or both of these propositions, while in *Paul* v.
*City of Kenosha*, 22 Wis. 266, and in some other de-
cisions, the theory of a total failure of consideration is
made to support a recovery.   In that case the city issued
and sold its bonds, which were void for want of power to
issue them.   They were a part of an issue of bonds in aid
of the construction of a railroad, were originally delivered

to the railroad company, but in some manner afterwards came into the possession and ownership of the city, which sold them as the property of the city to the plaintiff, who paid into the city treasury cash or its equivalent therefor. In *Hitchcock* v. *City of Galveston* it was determined that the city had the power to make and to pay for the particular improvements and so to contract therefor. What it had no power to do was to issue bonds in payment of the contract price, and it was held that, while specific performance of its engagement to do the un-authorized thing would not be enforced, the city was liable upon its contract. So in *Argenti* v. *City of San Francisco*, it was found that the city had authority to order the improvements which were made, and in the opinion of Chief Justice Field, rendered upon an application for rehearing, he places his concurrence in the judgment theretofore rendered expressly upon the ground that the contracts made were valid. Page 282. He concludes his opinion thus:

"I admit that there are numerous authorities which conflict with these views. Indeed, upon the general subject of the extent of the liability of a municipal corporation, the authorities are a tangled web of contradictions, and it is difficult to assert any proposition with respect to the same for which adjudications on both sides may not be cited. As a general rule, undoubtedly the city is only liable upon express contracts authorized by ordinance. The exceptions relate to liabilities from the use of money or other property, which does not belong to her, and to liabilities springing from neglect of duties imposed by the charter, from which injuries to parties are produced. There are limitations even to these exceptions in many instances, as where the property or money is received in disregard of positive prohibitions; as, for example, she would not be liable for moneys received upon the issuance of bills of credit, as this would be, in effect, to support a proceeding in direct contravention of the inhibition of the charter. Other limitations may exist, but it is unnecessary to pursue the matter any further."

In *Allen* v. *Intendant, etc., of La Fayette*, a bill was filed by the taxpayers to restrain the payment of warrants

given for borrowed money. It appeared that the town purchased a schoolhouse and land, for which it took a quitclaim deed, paying a small part of the purchase price from funds on hand, and borrowing the remainder from one to whom warrants were issued. It was determined, first of all, that the town had power to own and maintain public schools. It is found, also, affirming previous rulings of the court, that the power to borrow money is not incident to municipal corporations, and that if it exists, it must be by force of express legislative enactment, or by force of the bestowing of other powers, coupled with the imposition of duties incapable of exercise or performance without borrowing money. It is further determined that the officers of the town had no authority to borrow the particular money or to issue the warrants which were drawn and delivered. But a legal liability is asserted to repay the money borrowed; it having been used for authorized corporate purposes. The court, in reaching this conclusion, relies upon *Gause* v. *City of Clarksville*, 5 Dill. (U. S.) 180, which in turn affirms *Wood* v. *City of Louisiana* 5 Dill. (U. S.) 122. The opinion thus concludes:

"We cannot perceive that the doctrine is open to objection on the ground of its supposed evil tendencies and consequences. It is shorn of all perilous possibilities by the limitations which hedge it about. It cannot obtain where the charter, or other statute operating in the premises, contains a prohibition of the power to borrow money, since a promise cannot be implied in the face of express law, but only in cases where, as in this one, there is merely a defect of power. 1 Dillon on Municipal Corporations (4th Ed.), § 451. It involves no danger of the municipality being charged with moneys which have been appropriated by its officers to their own use, or even to the use of the corporation, except in the manner, to the extent, and for the purposes authorized by the charter, as in either case the implication will not arise, and corporate liability will not attach. None of the evils which are justly supposed to result from the power to borrow money, which are not also attendant upon the capacity to incur debts, and which therefore have led to a denial of the

former power, unless expressly, or by necessary intendment, conferred, while the latter is admitted as incident to ordinary municipal functions, can possibly supervene, where the money which has been borrowed has also been honestly devoted to expenditures for which the corporate authorities might have incurred debt; and to declare liability in the one instance, and deny it in the other, on the ground of evils which pertain alike to both, would be an anomaly to which we cannot subscribe. Indeed we apprehend that the power to create debts may be productive of more evils in municipal government than could, in the nature of things, result from the doctrine we are considering, when would-be lenders of money come to understand that the return of their proverbially timid capital depends, not upon the contracts they make, but on the faithful application of the loan to certain specific objects, by persons over whom they have no control.

"From every point of view, therefore, we feel safe in affirming that, under the case presented by the bill and answer—there really being no dispute about the facts in this regard—Mrs. Frederick has a valid demand against the town of La Fayette for the amount of money advanced by her, not because the corporate authorities agreed to repay it to her, but because they have legitimately used it for the benefit of the town, in a way, and to an end fully authorized by its charter. The warrants she holds are not enforceable as such, yet they truly represent the amount of her claim; and, in the payment of that amount, the corporate authorities would do no more than equity and justice require of them. It would be an idle and useless thing, therefore, to enjoin their payment; and exercising that discretion which may always be indulged with reference to the grant or refusal of an injunction, when substantial equity does not demand the issuance of the writ, we decline to reinstate it in this case."

Cases may be found where a like result has been arrived at by holding that the plaintiff, lender, was subrogated to the rights of the debtor, who had been paid with the borrowed money. If we were to admit the force of the reasoning employed by the Alabama court, and if the point for decision was now first presented to this court, it is manifest that plaintiff has not made a like case upon the facts. The case might be rested here. But the point pre-

sented, while important, is not novel. And if it appeared that the money borrowed from the plaintiff was lawfully disbursed for current expenses of the county, the decision must still be against the plaintiff. Some statements of the judges, unnecessary to the decision, aside the decisions of this court, have, with a single exception, recognized and enforced rules which deny, as between the municipality and an individual dealing with it, any remedy for municipal default in cases where the power to deal at all is lacking, as well as in cases where express statutory restrictions upon the manner of dealing have been ignored. The exception is found in *Peterson* v. *City of Ionia*, 152 Mich. 678, which is cited and relied upon by plaintiff. While the precise question involved in that case cannot be said to have been decided in *McBrian* v. *City of Grand Rapids*, 56 Mich. 95, the legal theory, according to which the case was determined, is precisely opposed to the one adopted in deciding *Ely* v. *City of Grand Rapids*, 84 Mich. 336, and *Auditor General* v. *Stoddard*, 147 Mich. 329. Both of these cases affirm that the charter requirement that certain public work shall be let to the lowest bidder is mandatory, and that a contract, made without complying with the charter provision, is void. In *East Jordan Lumber Co.* v. *Village of East Jordan*, 100 Mich. 201, 205, the rule is stated in this way:

"If, on the other hand, the contract be one which it was within the power of the corporation to make, the fact that informalities may be found in the proceedings does not prevent recovery, in a case where, as in the present, the municipal corporation has had the benefit of performance by the other contracting party, and has from time to time ratified the contract, and audited the bills presented. * * * This rule is, of course, not applicable where express statutory restrictions have been ignored in making the original contract."

That, when a municipality is forbidden to execute public works, except under contract with the lowest bidder, there can be no recovery, as upon an implied contract, for work done for the benefit of the municipality, but not

actually contracted for, and that, to state the rule differently, a promise will not be implied, as against a municipal corporation, where it cannot contract expressly, is affirmed in *City of Detroit* v. *Paving Co.*, 36 Mich. 335; *City of Detroit* v. *Robinson*, 38 Mich. 108; *Niles Water Works* v. *Mayor, etc., of Niles*, 59 Mich. 311; *Mackey* v. *Township of Columbus*, 71 Mich. 227; *Spitzer* v. *Village of Blanchard*, 82 Mich. 234; *East Jordan Lumber Co.* v. *Village of East Jordan*, 100 Mich. 201; and in other decisions of this court. The decision in *Peterson* v. *City of Ionia*, clearly lays down an opposed rule, and has the effect of overruling, without expressly so announcing, a large number of previous decisions. I think *Peterson* v. *City of Ionia* should be now expressly overruled. The case at bar does not present the question whether a municipal corporation may not be required to restore to the owner specific property which it has attempted without authority to buy or take, or whether an action lies for money paid by mistake, or upon a consideration which fails, or which was obtained through imposition. It is apparent, however, that in such cases a remedy might be afforded without in any way affirming the exercise by the municipality of a power it did not possess, and without rendering nugatory the express provisions of a statute. There is here neither failure of consideration, imposition, nor mistake. An express contract was voluntarily made. Recovery upon the express contract being denied, it is sought to recover the money upon an implied contract, as money had and received for the use and benefit of the lender. Except for the operation of the statute of limitations, the effect, in either case, would be the same, and the consequences those which the decisions of this court which have been referred to seek to avert.

I concur in reversing the judgment of the circuit court. Appellant will recover costs of both courts.

MONTGOMERY and HOOKER, JJ., concurred with OSTRANDER, J.